## A01A0489. TUNSIL et al. v. JACKSON.

(546 SE2d 875)

MIKELL, Judge.

Merrill C. Tunsil (M. Tunsil), an attorney licensed in Florida, and his brother, Herman R. Tunsil, an attorney licensed in Georgia, represented Carl Jackson and his ex-wife, Lillie Griffin, in an action to recover for the wrongful death of their son, Keith Jackson. Because their action ended in dismissal on the merits and they did not discover the dismissal until a year and a half afterward, Carl Jackson sued the Tunsil brothers and their law firms, alleging legal malpractice and breach of fiduciary duty. On the first day of trial, both Tunsil brothers stipulated that they had been negligent but contended Carl Jackson suffered no damages. At the close of the evidence, the Tunsil brothers moved for a directed verdict, which the trial court denied.

The jury returned a verdict (1) against M. Tunsil and Merrill C. Tunsil, P.A. in the amounts of $8,750 actual damages, $200,000 punitive damages, and $969.25 expenses of litigation and attorney fees; and (2) against Herman Tunsil and Herman R. Tunsil, P.C. in the amounts of $8,750 actual damages, $200,000 punitive damages, and $969.25 expenses of litigation and attorney fees.

M. Tunsil and Merrill C. Tunsil, P.A. appeal[1] from the judgment entered on the verdict, contesting the sufficiency of the evidence to support it and the denial of their motion for directed verdict. On appeal, we construe the evidence most strongly in support of the jury's verdict and will uphold the verdict if there exists any evidence to support it.[2] Because the evidence amply supports the verdict, we affirm.

The evidence shows that on September 12, 1993, a passing automobile struck 20-year-old Keith Jackson and several other people as they stood on a highway in Charlton County, Georgia. Keith Jackson and a young woman died as a result of the injuries they sustained.[3]

Within a few months of the accident, Keith Jackson's parents engaged M. Tunsil and his brother to represent them in an action to recover damages for the wrongful death of their son and for his pain and suffering. During M. Tunsil's investigation, he discovered that

---

[1] Herman Tunsil and Herman R. Tunsil, P.C. are not parties to this appeal. While M. Tunsil is licensed to practice in Florida, he is not licensed to practice in Georgia and appears pro se in this appeal. In his brief, he identified only himself as the appellant. However, Merrill C. Tunsil, P.A. thereafter adopted M. Tunsil's brief in all respects, which appears to be acceptable under *Eckles v. Atlanta Technology Group*, 267 Ga. 801, 806 (2) (485 SE2d 22) (1997) (rule that only a licensed attorney is authorized to represent a corporation in a proceeding in a court of record is applicable to corporate representation only, and all noncorporate business owners are completely unaffected thereby); see OCGA § 14-10-2 (" 'Professional association' means an unincorporated association. . . .").

[2] *Ga. Farm &c. Ins. Co. v. Schlies*, 238 Ga. App. 299 (1) (520 SE2d 468) (1999).

[3] The woman's case settled for $35,000; see Division 1, infra.

some of the individuals who were struck were wearing "bright clothing" and that the individuals in the driver's automobile had seen the victims before impact. With regard to the pain and suffering claim, M. Tunsil determined that since no autopsy was performed, the driver would be unable to prove with medical certainty that Keith Jackson's death was instantaneous. After further researching the accident and realizing that the victims may have been standing in the road, M. Tunsil demanded $100,000 from the driver of the automobile based on the "last chance" doctrine.

The record reveals, however, that the Tunsil brothers did not file a complaint until October 4, 1995, by which time the two-year statute of limitation had expired. M. Tunsil admitted that at the time, he did not know the statute of limitation for a wrongful death claim in Georgia and had relied, in part, on his understanding of Florida law. The driver did not make any offer to settle the case, but instead, in September 1996, moved for partial summary judgment based on the statute of limitation.

The Tunsil brothers failed to respond to the motion. Previously, they had failed to provide timely responses to discovery requests propounded by the driver, resulting in the filing of a motion to compel.

On January 9, 1997, the trial court ordered the parties to file a consolidated pretrial order by January 30, 1997, warning that "[f]ailure to timely comply with the terms of this Order may result in the Dismissal of your case. . . ." The Tunsil brothers failed to comply, and the trial court dismissed the case on the merits on February 5, 1997. Rather than appealing the dismissal within 30 days, M. Tunsil instead filed a motion to vacate and set aside the dismissal. He later admitted that he had not researched Georgia law before filing the motion.

On August 27, 1998, when the trial court denied the motion, M. Tunsil filed a "Motion for Rehearing," which was denied by oral order on April 13, 1999. On May 12, 1999, M. Tunsil filed a notice of appeal, which this Court dismissed due to his failure to follow the discretionary appeals process. Further, at the legal malpractice trial, M. Tunsil's brother admitted knowing at the time the notice of appeal was filed that the time for appeal had long since expired.

Meanwhile, in a March 6, 1997 letter to Carl Jackson, M. Tunsil did not mention the dismissal or the motion to set aside, but instead painted a dismal picture of the merits of the case. Jackson testified at the legal malpractice trial that neither M. Tunsil nor his brother ever told him that his case had been dismissed. He testified, "I couldn't find him," because M. Tunsil was giving him the "runaround." He described his unsuccessful attempts to contact the attorney at his office, but the attorney was "always gone or something, never there." Jackson stated that M. Tunsil had accused him of "sneaking up on [him] trying to find out what [M. Tunsil was] doing." He told of an

occasion when M. Tunsil had scheduled a visit to his home, and although Jackson "sat home the whole weekend, [M. Tunsil] never come by, call or nothing. . . ."

When M. Tunsil finally visited Jackson's home, he told Jackson, "if [I] owe [you] anything it would be a few dollars and [I] could pay [you] out of [my] own pocket with that." During cross-examination by M. Tunsil, he said to Jackson, "You realize sometimes in a case there is nothing going on in it to tell you, so if your lawyer tells you —." Jackson interrupted, "Like one time I asked you . . . about the case, you told me in that little small town they don't have court but once a year. They have court regular like everybody else. I went up there on my own, took off my job and found out. . . ." Jackson told about his unsuccessful efforts to obtain his file, recalling that he had gone to M. Tunsil's office, then to the police department who told him that his attorney would have to release it — but that M. Tunsil had refused to do so. Jackson testified, "That is why I lost my job, trying to get somebody to take over my case. Health went bad. Everything because of you, everything because of you."

Resorting to contacting a bar association, Jackson was referred to another attorney, who after investigating the case, informed Jackson by letter dated October 2, 1998, that his case had been dismissed on the merits in February 1997, although there had been subsequent attempts to reinstate it. The instant lawsuit ensued.

1. To recover on a legal malpractice claim, a plaintiff must show that (1) he employed the attorney, (2) the attorney failed to exercise ordinary care, skill, and diligence, and (3) such negligence was the proximate cause of damage to the client.[4] Appellants contend that there was no evidence establishing that M. Tunsil's negligence in the underlying wrongful death action proximately caused any damages. Appellants point to what they claim were weaknesses in the underlying wrongful death action and various defenses that the driver could have argued in support of their claim that the underlying case lacked merit. The record, however, demonstrates otherwise, containing some evidence showing liability on the driver's part and showing the full value of Keith Jackson's life.

We also note that at the time of the automobile accident, the driver had liability insurance of $100,000 per person with an aggregate limit of $300,000. The incident generated several lawsuits, including one wrongful death suit that settled for $35,000. M. Tunsil admitted that the underlying case was worth that amount. In addition, another person who sustained injuries settled for $15,000. These facts further demonstrate that the underlying case had settle-

---

[4] *Szurovy v. Olderman*, 243 Ga. App. 449, 451 (530 SE2d 783) (2000).

ment value. Thus, the trial court did not err in denying appellants' motion for directed verdict on Jackson's legal malpractice claim.

2. Appellants contend that the trial court erred in denying their motion for directed verdict on Jackson's claim of breach of fiduciary duty, which was based on his allegation that M. Tunsil had wilfully concealed the dismissal. Appellants argue that M. Tunsil did not breach his fiduciary duty because he eventually informed Jackson of the dismissal. We disagree.

As Jackson's legal representative, M. Tunsil owed him fiduciary duties to show loyalty, to exercise the utmost good faith, to apply his best skill, zeal, and diligence in representing him, and to avoid interests or actions that were incompatible with Jackson's.[5] Good faith demands that the attorney make known to the client all material facts which concern the case,[6] which would certainly include a dismissal on the merits of the lawsuit.

The record here contains some evidence, although disputed by M. Tunsil, that M. Tunsil concealed the dismissal of the wrongful death action from Jackson. Further, Jackson testified to the physical, emotional, mental, and economic harm he suffered as he sought to determine the status of his case.[7] Thus, the trial court did not err in denying appellants' motion for directed verdict on the claim of breach of fiduciary duty.

3. Finally, appellants contend that the trial court erred in denying their motion for directed verdict on the issue of punitive damages. We disagree. Whether punitive damages should be awarded is ordinarily a jury question.[8] As Jackson presented evidence that M. Tunsil committed legal malpractice and breached fiduciary duties, the trial court properly submitted the issue to the jury.[9]

Appellants contend that there was no evidence that M. Tunsil's actions showed wilful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to the consequences, as required under OCGA § 51-12-5.1 (b). This contention is meritless. "The expression 'conscious indifference to consequences' relates to an intentional disregard of the rights of another, knowingly or willfully disregarding such rights."[10] The evidence authorized the jury to conclude that M. Tunsil's actions showed such indifference.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

---

[5] *Tante v. Herring*, 264 Ga. 694, 695-696 (2) (453 SE2d 686) (1994); *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 67 (3) (537 SE2d 670) (2000).

[6] *Glisson v. Freeman*, 243 Ga. App. 92, 99 (1) (532 SE2d 442) (2000).

[7] See generally *Tante, supra*, 264 Ga. at 696.

[8] *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 223 (2) (493 SE2d 622) (1997).

[9] Id.

[10] (Citations and punctuation omitted.) Id. at 225 (10).

DECIDED MARCH 7, 2001.

*Merrill C. Tunsil*, for appellants.
*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Tracey Walker*, for appellee.