## A04A2302. FITZSIMONS et al. v. W. M. COLLINS ENTERPRISES, INC. et al.
### (610 SE2d 654)

MILLER, Judge.

W. M. Collins Enterprises, Inc. (Collins) hired Jim Albritton to do construction work based on assurances from Howard L. FitzSimons, president of Insurance Management Associates, Inc. (IMA), that Albritton had workers' compensation insurance for such work. When one of Albritton's workers was injured on the job, Collins discovered that Albritton did not in fact have a workers' compensation policy for construction work, and Collins and its insurer, Home Builders Association of Georgia, Inc., had to pay for the worker's injuries. Collins and its insurer then sued Albritton,[1] FitzSimons, and IMA for, among other things, fraud, negligent misrepresentation, attorney fees, and punitive damages. A jury found in favor of Collins and its insurer on their fraud and negligent misrepresentation claims, and imposed punitive damages against FitzSimons and IMA. The jury did not include an award of attorney fees in their verdict. FitzSimons and IMA appeal, arguing that the trial court erred in denying their motion for a directed verdict on all claims asserted against them. We discern no error and affirm.

> Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motion for directed verdict . . . will not be disturbed [on appeal].

(Citation and punctuation omitted.) *Gantt v. Bennett*, 231 Ga. App. 238, 240 (1) (499 SE2d 75) (1998).

Construed in favor of Collins, the evidence reveals that in September 1996, Albritton's secretary contacted FitzSimons at IMA to obtain a workers' compensation insurance quote for Albritton's

---

[1] A default judgment was later entered against Albritton, who is not a party to this appeal.

construction company, Southeastern Custom Builders, Inc. FitzSimons gave Albritton the quote, but Albritton believed that the quoted price was too high and did not obtain the insurance policy.

Albritton's secretary contacted FitzSimons again a week later and inquired about workers' compensation coverage for a new company started by Albritton, Cherokee Motor Sports, Inc. (Cherokee Motor Sports). This company allegedly only performed auto service and repair work and was not engaged in construction activity. Accordingly, the estimated workers' compensation premiums were far lower than those that would have been charged for Albritton's construction company. Cherokee Motor Sports issued a check for the full amount of the estimated premium and was given a workers' compensation policy by Lumberman's Mutual Insurance Company.

After Cherokee Motor Sports' workers' compensation coverage went into effect, IMA began receiving requests for certificates of insurance to be issued to several companies considering whether they should hire Cherokee Motor Sports as a construction subcontractor. FitzSimons signed and issued several of these certificates of insurance.

In 1997, Collins hired Albritton to do certain construction work. Before work began, however, Collins attempted to confirm that Albritton and his workers had workers' compensation insurance for building activities. Although FitzSimons suspected at the time that Cherokee Motor Sports may have been engaging in construction work contrary to their workers' compensation policy classification, he nevertheless signed and issued the certificate of insurance to Collins.

A Collins representative reviewed the certificate of insurance, and noticed that the listed insured was "Cherokee Motor Sports, Jim Albritton DBA." This listing was odd, because Collins had hired Albritton through his company, Custom Builders, and had not hired any company named Cherokee Motor Sports. The Collins representative then called FitzSimons, the only contact person listed on the insurance certificate, and asked him whether or not Albritton in fact "had workers' compensation insurance for building activities." FitzSimons responded that Albritton did have such insurance. Still concerned after this initial call, the Collins representative called FitzSimons a second time, only a few minutes later, to make sure that Albritton and his employees were insured as builders. FitzSimons once again assured the employee that Albritton had the appropriate insurance. FitzSimons even went so far as to tell the Collins representative that she "didn't have to worry about" Albritton's company being classified as a motorcycle repair shop under its workers' compensation policy because the insurance company was already aware that Albritton was working as a builder.

After being thus assured by FitzSimons that Albritton had workers' compensation insurance for construction, Collins allowed Albritton to begin construction work. During the job, one of Albritton's workers was seriously injured. The worker brought a workers' compensation claim against Albritton, but because Albritton did not have a workers' compensation policy for construction, Collins and its insurer had to pay for the injured worker's claim.

Collins and its insurer sued FitzSimons and IMA for fraud, negligent misrepresentation, punitive damages, and attorney fees. At trial FitzSimons and IMA moved for a directed verdict on all claims against them, but the trial court denied the motion. The jury returned a verdict in favor of Collins and its insured on their claims for fraud, negligent misrepresentation, and punitive damages, prompting FitzSimons and IMA to appeal.

1. FitzSimons and IMA contend that the trial court erred in denying their motion for a directed verdict on appellees' fraud claim. Specifically, appellants contend that there was no evidence from which the jury could find that FitzSimons intended to induce Collins to act and that Collins justifiably relied on FitzSimons's representations.[2] We disagree.

From the evidence presented, the jury could conclude that FitzSimons knew that Albritton was engaging in construction work despite the fact that Albritton's company only had a workers' compensation policy covering work for automobile repairs. Despite this knowledge, FitzSimons continued to issue certificates of insurance to entities that had hired Albritton to do construction work. When Collins specifically sought insurance information about Albritton before allowing him to begin a construction project, FitzSimons reassured Collins three times that Albritton had insurance for building activity: (1) by issuing a certificate of insurance to Collins; (2) by informing Collins's employee in a phone call that Albritton had workers' compensation insurance for construction work; and (3) by reaffirming that Albritton had the appropriate insurance in a follow-up phone call. In light of the evidence presented and the inferences that can be drawn therefrom, appellees made a sufficient showing for the jury to conclude that FitzSimons intended to induce Collins to hire Albritton to do construction work for which he was not insured. See, e.g., *Bowen & Bowen Constr. Co. v. Fowler*, 265 Ga. App. 274, 276-277 (2) (593 SE2d 668) (2004) (even where evidence is conflicting, jury verdict on fraud claim will be upheld where there is any evidence to support it).

---

[2] In order to prove fraud, appellees were required to show: (1) a false representation, (2) scienter, (3) intent to induce them to act or refrain from acting, (4) justifiable reliance, and (5) damages. *ComSouth Teleservices v. Liggett*, 243 Ga. App. 446, 449 (3) (531 SE2d 190) (2000).

Further, there was sufficient evidence for the jury to consider whether Collins justifiably relied on FitzSimons's representations. The certificate of insurance issued to Collins listed only FitzSimons as the contact person whom Collins needed to contact regarding Albritton's insurance. Collins's employee twice contacted FitzSimons with concerns about the workers' compensation policy, and each time FitzSimons assured her that Albritton had the appropriate coverage. From the evidence presented, a jury could conclude that Collins justifiably relied on FitzSimons's misrepresentations. See, e.g., *Paul v. Destito*, 250 Ga. App. 631, 636 (1) (550 SE2d 739) (2001) (jury properly considers justifiable reliance element of fraud claim where evidence does not demand conclusion that plaintiff's reliance was unjustified).

We are unpersuaded by appellants' argument that the evidence demanded the conclusion that the statements made by FitzSimons were merely opinions relating to insurance coverage that were not subject to a fraud cause of action. See *Thomas v. Union Fidelity Life Ins. Co.*, 168 Ga. App. 267, 269 (4) (308 SE2d 609) (1983). To the contrary, the evidence supports the conclusion that FitzSimons made misrepresentations as to the actual *fact* of an insurance policy existing that would provide coverage for construction work when no such policy actually existed. Such misrepresentations are properly the subject of an action for fraud. See *King v. Brasington*, 252 Ga. 109, 110 (1) (312 SE2d 111) (1984); *Anderson v. Redwal Music Co.*, 122 Ga. App. 247, 251 (176 SE2d 645) (1970); *Pope v. Ledbetter*, 108 Ga. App. 869, 871 (2) (134 SE2d 873) (1964).

Since some evidence supported appellees' fraud claim, the trial court properly denied appellants' motion for a directed verdict.

2. FitzSimons and IMA claim that the trial court should have granted them a directed verdict on appellees' negligent misrepresentation claim because there was no evidence that Collins justifiably relied on FitzSimons's representations. However, as we held in Division 1, there was evidence from which the jury could conclude that Collins justifiably relied on FitzSimons's representations. Thus, the trial court properly denied appellants' motion for a directed verdict on this issue.

3. FitzSimons and IMA argue that the trial court erred in denying their motion for a directed verdict on punitive damages. We disagree.

"Whether punitive damages should be awarded is ordinarily a jury question." (Footnote omitted.) *Tunsil v. Jackson*, 248 Ga. App. 496, 499 (3) (546 SE2d 875) (2001). Punitive damages may be awarded where the defendant has engaged in wilful misconduct or fraud, or has acted with malice, wantonness, oppression, or an entire

want of care that would raise a presumption of conscious indifference to consequences. OCGA § 51-12-5.1 (b).

Here, the evidence supported a finding that FitzSimons engaged in fraud, and further showed that FitzSimons allowed Collins to hire Albritton without regard to the consequences that could result to Collins from Albritton being uninsured. The trial court properly allowed the jury to consider the question of punitive damages. See *Tunsil*, supra, 248 Ga. App. at 499 (3).

4. The trial court also properly submitted appellees' claim for attorney fees to the jury. "[E]very intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees. . . . [G]enerally the question of bad faith is for the jury, to be determined from its consideration of the facts and circumstances in the case." (Citations and punctuation omitted.) *Tyler v. Lincoln*, 272 Ga. 118, 122 (2) (527 SE2d 180) (2000). From the facts and circumstances here, the trial court properly allowed the jury to consider the issue of attorney fees. See id.

Moreover, even if the trial court had erred in submitting the issue to the jury, such error would have been harmless because the jury did not award any attorney fees to appellees as part of their verdict. *Byrne v. Reardon*, 196 Ga. App. 735, 736 (2) (397 SE2d 22) (1990).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED FEBRUARY 17, 2005 —
RECONSIDERATION DENIED MARCH 3, 2005 — 

*Michael T. Thornton*, for appellants.
*Moore, Ingram, Johnson & Steele, Robert D. Ingram, Jeffrey A. Daxe*, for appellees.