A05A2004. BIENERT et al. v. DICKERSON et al.
(624 SE2d 245)

BLACKBURN, Presiding Judge.

Following a favorable jury award on her claim for a business brokerage commission against Julie Dickerson, Catherine Bienert appeals a summary judgment order that had dismissed her claims for a real estate brokerage commission. She further appeals that portion of the jury verdict awarding damages on Dickerson's counterclaim and appeals the trial court's post-judgment award of OCGA § 9-15-14 (b) attorney fees to Dickerson and the other defendant (Dickerson & Associates). Because Bienert failed to appeal the summary judgment timely, and because evidence supported Dickerson's counterclaims and the motion for attorney fees, we affirm.

Construed in favor of the verdict, *Jordan v. Stephens*,[1] the evidence shows that Dickerson sought to sell her business that supplied personnel to insurance companies. The business assets consisted of various items, including two condominiums. Dickerson orally hired Bienert and her company Bottom Line Management to act as her broker, and Bienert found a potential buyer and expended intensive efforts over a period of months in negotiating the deal to its consummation. As the closing approached, Dickerson and Bienert disagreed over the amount of the commission, with Bienert claiming they had agreed to a $125,000 commission and Dickerson claiming they had agreed to a $50,000 finder's fee.

Bienert filed a UCC financing statement as a lien on the assets of the business, attaching a document that she altered to falsely indicate that she was a party to the sales agreement. Bienert soon removed the lien, which nevertheless delayed the closing and required Dickerson to expend funds to resolve the matter. With no payment of any brokerage commission, the closing proceeded with the buyer paying Dickerson $1.8 million for her business and its assets.

Bienert and her company sued to recover the brokerage commission, asserting various claims for breach of contract, quantum meruit and quantum valebant, fraud, attorney fees, and punitive damages. Dickerson counterclaimed for breach of fiduciary duty arising out of the filing of the false lien document and sought punitive damages. Bienert later added Dickerson & Associates as a defendant, asserting separate claims against this company and Dickerson to recover a real estate commission on the sale of the business's condominiums. The trial court entered partial summary judgment on several claims of

---

[1] *Jordan v. Stephens*, 221 Ga. App. 8, 10 (3) (470 SE2d 733) (1996).

Bienert, including the real estate commission claims, but denied summary judgment on Dickerson's counterclaim.

A jury trial ensued on the remaining claims, resulting in a verdict in Bienert's favor of $125,000 for procuring the sale and of an additional $30,000 for attorney fees. This portion of the verdict is not challenged. The jury also awarded Dickerson $13,088.44 in compensatory damages (with an additional $25,000 in punitive damages) on her counterclaim for breach of fiduciary duty. Pursuant to OCGA § 9-15-14 (b), the trial court in post-trial proceedings awarded Dickerson $41,175.53 in attorney fees. Bienert appeals three orders: the partial summary judgment dismissing her real estate commission claims, the award on the counterclaim, and the attorney fees award under OCGA § 9-15-14 (b).

1. Bienert's appeal of the summary judgment order dismissing her real estate commission claims (Counts 9, 10, and 11 of the amended complaint) is too late. In the December 2003 order granting partial summary judgment on these claims, the trial court expressly stated: "There being no just reason for delay, final judgment is hereby entered in Defendants' favor and against Plaintiffs on Counts 4, 9, 10 and 11." Under OCGA § 9-11-54 (b), such language constituted a final adjudication on the merits of these claims. *Merchant v. Mitchell*.[2] Bienert failed to appeal this order within 30 days but waited until the present post-trial appeal (filed in October 2004) to contest the order.

This appeal is untimely. As held in *Young v. Turner Heritage Homes*:[3]

> Because the trial court's order designated its grant of summary judgment as final under OCGA § 9-11-54 (b), [Bienert] was required to appeal any adverse rulings in that order within 30 days of the final judgment's entry. The normal rules that would allow a direct appeal from an order granting summary judgment to be taken either within 30 days of rendition of the judgment or after the rendition of the final judgment in the case do not apply. If an appellant fails to file a notice of appeal within 30 days of such an order, the right to review the order is lost.

(Citations omitted.) See *Lewis v. Carscallen*.[4]

Having failed to appeal this final order within 30 days of its entry, Bienert's appeal of this order is untimely. Accordingly, any portion of

---

[2] *Merchant v. Mitchell*, 241 Ga. App. 173, 175 (4) (525 SE2d 710) (1999).

[3] *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401 (2) (526 SE2d 82) (1999).

[4] *Lewis v. Carscallen*, 274 Ga. App. 711, 713 (1) (618 SE2d 618) (2005).

this appeal challenging this summary judgment order is not properly before us and is dismissed. See *Jarallah v. Aetna Cas. &c. Co.*[5]

2. Dickerson's counterclaim asserted that as Dickerson's business broker, Bienert owed a fiduciary duty to Dickerson to not interfere with the deal by intentionally filing falsified papers to encumber the business's assets prior to closing. Dickerson averred that Bienert did just that, which caused Dickerson damages and further entitled Dickerson to punitive damages. Bienert's second enumeration contends that the trial court erred in denying its motion for directed verdict (and subsequent motion for judgment notwithstanding the verdict) on this counterclaim.[6] She argues that no evidence showed the essential elements of this claim.

> The standard for granting motions for directed verdict and for j.n.o.v. is the same. They may be granted only when no conflict exists in the evidence and the evidence presented, with all reasonable inferences therefrom, demands a particular verdict. On appeal, the standard of review is "any evidence." This court must therefore view the evidence presented at trial and determine whether some evidence supported the jury's verdict.

*Republic Svcs. of Ga. v. Hoak.*[7]

"[A] claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler.*[8] We hold that some evidence supported each of these elements.

(a) *Existence of a Fiduciary Duty.* Bienert first claims that under OCGA § 10-6A-4 (a), a real estate broker no longer owes fiduciary duties to a client. This statute, which is in derogation of common law and must therefore be limited in strict accordance with its language (*Killearn Partners v. Southeast Properties*[9]), applies only to real estate brokers, not to business brokers. See OCGA § 10-6A-3. Since, as held in Division 1 above, the final judgment finding there were no valid real estate brokerage claims was unappealed, the context of the present appeal is whether Bienert in her business brokerage actions

[5] *Jarallah v. Aetna Cas. &c. Co.*, 199 Ga. App. 592, 593 (405 SE2d 510) (1991).

[6] Bienert also claims that the court erred in denying its motion for summary judgment on this same claim. However, "[a]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case." (Punctuation omitted.) *Kichlighter v. Woodward*, 267 Ga. 157, 162 (5) (476 SE2d 248) (1996).

[7] *Republic Svcs. of Ga. v. Hoak*, 273 Ga. App. 330, 331 (615 SE2d 175) (2005).

[8] *Griffin v. Fowler*, 260 Ga. App. 443, 445 (1) (579 SE2d 848) (2003).

[9] *Killearn Partners v. Southeast Properties*, 279 Ga. 144, 146 (2) (611 SE2d 26) (2005).

entered into a fiduciary or confidential relationship with Dickerson that would give rise to a fiduciary duty not to file false documents to interfere with the deal at issue.

OCGA § 23-2-58 provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

"When a fiduciary or confidential relationship is not created by law or contract, we must examine the facts of a particular case to determine if such a relationship exists." *Yarbrough v. Kirkland.*[10] Because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of a confidential or fiduciary relationship is generally a factual matter for the jury to resolve. Id.; *Howard v. Barron.*[11]

Here Bienert herself testified that as Dickerson's broker in the facts of this particular case, she owed Dickerson a fiduciary duty of allegiance to put Dickerson's interests above her own. Bienert further testified that unlike a real estate agent, she as a business broker engaged in a long-term, in-depth relationship with Dickerson so as to understand the inner workings of Dickerson's business. Representing Dickerson's interests, Bienert played an intimate role in the negotiations and was not a mere middleman. These particular facts supported a finding of a fiduciary or confidential relationship between Bienert as broker and Dickerson as principal or seller. See *Remediation Svcs. v. Ga.-Pacific Corp.*[12]

Bienert points to a statement made in Dickerson's answer as a binding admission in judicio that no fiduciary relationship existed ("Dickerson further denies making any representations, implied or otherwise, that would indicate the existence of any relationship or contract between Plaintiffs and Dickerson."). But that same answer pled in the alternative that if a broker relationship were found to exist, then Bienert breached her fiduciary duties in that relationship. Moreover, the trial court entered a pretrial order that, expressly superseding the pleadings, contained no such admission and indeed

---

[10] *Yarbrough v. Kirkland*, 249 Ga. App. 523, 527 (2) (548 SE2d 670) (2001).

[11] *Howard v. Barron*, 272 Ga. App. 360, 363 (2) (612 SE2d 569) (2005).

[12] *Remediation Svcs. v. Ga.-Pacific Corp.*, 209 Ga. App. 427, 431-432 (433 SE2d 631) (1993).

contained express allegations of a fiduciary relationship. See *Keeley v. Cardiovascular Surgical Assoc.*[13] (pretrial order supersedes pleadings). See generally OCGA § 9-11-16 (b). Finally, by admitting evidence showing the fiduciary relationship, the trial court tacitly permitted Dickerson to withdraw any contrary admission contained in the superseded pleadings (to the extent such a withdrawal were necessary). *Knutsen v. Atlanta Women's Specialists Obstetrics &c.*[14] Thus, the jury was free to find a fiduciary relationship based on the evidence presented.

(b) *Breach of Fiduciary Duty.* Bienert breached her fiduciary duty to Dickerson when she falsified the sales agreement to show that she was a party and a signatory thereto and used such to support her UCC financing statement to place a lien on the business's assets so as to stymie the deal. Such intentional, fraudulent misconduct to thwart the deal and to gain leverage for her claim for a brokerage commission was a clear breach of her fiduciary duty as Dickerson's representative to help facilitate the deal in Dickerson's best interests.

(c) *Damages Caused by Breach.* As a result of Bienert filing the false lien, Dickerson was required to expend $12,888.44 in attorney fees to clear up the matter and to pay money into escrow (later returned with interest) less a $200 nonrefundable escrow fee. This evidence supported a compensatory damage award of $13,088.44.

3. Wilful misconduct or fraud justifies a punitive damages award.[15] Bienert claims that the award of $25,000 in punitive damages for the breach of fiduciary duty here was unjustified in that her filing of the UCC financing statement was mere negligence. However, in light of the undisputed evidence that Bienert intentionally altered and then filed the sales agreement (with the UCC financing statement) to falsely reflect that she was a party thereto, Dickerson carried her burden of showing wilful misconduct or fraud in the filing of the lien.

4. Bienert contends that the court erred in awarding Dickerson and her company $41,175.53 in attorney fees under OCGA § 9-15-14 (b). Bienert argues that no evidence showed that any of her claims lacked substantial justification, that she unnecessarily expanded the proceedings, or that the damages were apportioned to account only for the alleged wrongful conduct. We disagree and affirm.

(a) *Claims Lacked Substantial Justification.* The trial court found that many of Bienert's claims lacked substantial justification. The court first recounted the tortured history of the complaint:

---

[13] *Keeley v. Cardiovascular Surgical Assoc.*, 236 Ga. App. 26, 27 (1) (510 SE2d 880) (1999).

[14] *Knutsen v. Atlanta Women's Specialists Obstetrics &c.*, 264 Ga. App. 87, 90 (589 SE2d 588) (2003).

[15] OCGA § 51-12-5.1 (b).

The Plaintiffs originally brought their action in eight counts: breach of contract, breach of implied contract, *quantum meruit* and *quantum valebant*, fraud, interest under OCGA § 7-4-16, attorney[ ] fees under OCGA § 13-6-11 (2 counts) and punitive damages. The Complaint was subsequently amended on November 27, 2002, to add Defendant Dickerson & Associates as a party, and to bring an additional three counts against both Defendants for "procuring cause," breach of contract and *quantum meruit* (Counts 9-11). Then, on August 19, 2003 a Second Amended Complaint was filed, adding claims against both Defendants for "procuring cause" and conversion (Counts 12 and 13). By Order dated October 27, 2003, this action was specially set for trial on January 5, 2004. Subsequently, Plaintiffs filed their Third and Fourth Amended Complaints on December 18, 2003 and December 24, 2003, respectively, and brought additional claims for "procuring cause," breach of contract and breach of duty (Counts 14-16).

The trial court then found that (i) an unappealed summary judgment was granted on seven of the first thirteen counts, (ii) a directed verdict was granted on all claims against Dickerson & Associates (since Bienert failed to present any evidence against this defendant even though this defendant was part of the pretrial order) and on the quantum valebant claim (which only applies when a plaintiff provides goods, which was never shown here, even though a jury charge was submitted on this point), (iii) Bienert abandoned Count 16, and (iv) the breach of implied contract claim was identical to the quantum meruit claim and therefore merged. Thus, of the sixteen counts, only five survived for submission to the jury. Many were duplicative or lacked any basis in law or fact. Evidence supported a finding that some of plaintiffs' claims lacked substantial justification.

(b) *Unnecessarily Expanded the Proceeding by Improper Conduct.* An ample amount of evidence supported the finding that plaintiffs' counsel engaged in improper conduct which unnecessarily expanded the proceeding.

(i) Plaintiffs' counsel failed to turn over key evidence, engaged in ex parte communications with a judicial mediator, and failed to identify and turn over expert reports prior to mediation, all of which resulted in sanctions and fines.

(ii) After the trial court closed discovery in March 2003, counsel for plaintiffs still sent out additional discovery requests in May 2003, causing further litigation and cross-motions for sanctions.

(iii) Plaintiffs' counsel filed redundant counts and amendments, even after the court had already ruled on them.

(iv) Plaintiffs' counsel surreptitiously and unethically taped conversations between himself and defense counsel, and then refused requests for the tapes, requiring extensive correspondence and briefing on the issue.

(v) Plaintiffs' counsel made disparaging comments, engaged in vitriolic language in many of his briefs, and frequently misstated the record, all of which required the trial court and opposing counsel to spend time correcting or responding to same.

(c) *Evidence Supported Attorney Fees Amount.* Dickerson sought $63,972.95 in attorney fees, submitting billing records showing the calculation of this amount and introducing testimony that such was reasonable and necessary. The trial court scrutinized the time entries, finding that a number of the hours billed related to matters for which fees were not appropriate. The court discarded hours that were spent in discovery matters for which it had already awarded or denied fees and also those hours spent in mediation. The court discounted the hours spent on the motion for summary judgment and on trial preparation based on the number of claims on which Bienert was ultimately successful.

Specifying the hours which survived and related to the remaining misconduct, the court found that time to be reasonable and necessary in light of the record and proceedings in the action. Multiplying those hours by rates it found to be reasonable and adding the related expenses, the court calculated the fees to be $41,175.53.

" 'OCGA § 9-15-14 (b) is discretionary and the standard of review is abuse of discretion.' *Haggard v. Bd. of Regents &c. of Ga.*"[16] *Carson v. Carson.*[17] Bienert's arguments that her counsel's actions were justifiable were simply matters that the trial court was authorized to resolve as conflicts in the evidence. Id. The detailed billing statements and testimony supplied the trial court with ample evidence from which it could determine what portion of the fees was attributable to the misconduct. Compare *Mills v. Parker.*[18] Inasmuch as evidence supported each of the findings of fact, our review of the record demonstrates that the court properly exercised its discretion in awarding attorney fees under OCGA § 9-15-14 (b). *Carson,* supra.

*Judgment affirmed. Appeal dismissed in part. Miller and Bernes, JJ., concur.*

---

[16] *Haggard v. Bd. of Regents &c. of Ga.*, 257 Ga. 524, 527 (4) (c) (360 SE2d 566) (1987).

[17] *Carson v. Carson*, 277 Ga. 335, 337 (2) (588 SE2d 735) (2003).

[18] *Mills v. Parker*, 267 Ga. App. 334, 336 (2) (599 SE2d 301) (2004).

DECIDED DECEMBER 2, 2005.

*Roger F. Krause*, for appellants.
*Carolyn V. Jordan*, for appellees.