A06A0698. ARGENTUM INTERNATIONAL, LLC et al. v. WOODS et al.

(634 SE2d 195)

RUFFIN, Chief Judge.

Hal and Ernestine Woods, Ed and Barbara Strain, Charles Stephens, Paul Reeves, and Wilburn and Betty Durrance (the "Plaintiffs") sued Argentum International, LLC, Argentum Research, Inc., A. Bart Flick, and Tom Miller (the "Defendants"), among others, alleging fraud, conspiracy, and conversion arising out of the Plaintiffs' investments in Argentum International. The trial court directed a verdict in favor of the Plaintiffs and against Argentum International in the amount of the Plaintiffs' investments in the company. The jury then found that Argentum Research, Flick, and Miller were also liable for damages in the amount of the Plaintiffs' investments, and subsequently awarded $250,000 punitive damages against the Defendants. The Defendants appeal the punitive damages award, and Argentum Research, Flick, and Miller appeal the award for the amount of the Plaintiffs' investments. For reasons that follow, we affirm.

Viewed in a light most favorable to the verdict,[1] the evidence shows that Flick developed a process for attaching silver ions to nylon fabric for use in medical dressings. By 1997, Flick had received a patent pending for a multilaminate silver nylon wound dressing (the "Patent"), and he assigned the Patent to Argentum International, a business he organized for the purpose of developing wound care products. The Patent was Argentum International's major asset. Argentum International solicited investments in the company with a business plan that Flick helped to write. The business plan stated that the company owned the Patent and that Flick would receive royalty payments for the use of it; however, Flick admitted at trial that the business plan was misleading as to the ownership of various wound care product trademarks by Argentum International. This business plan was given to the Plaintiffs, who invested a total of

---

[1] See *Vojnovic v. Brants*, 272 Ga. App. 475 (612 SE2d 621) (2005).

$937,500 in Argentum International during the nine-month period from February 1998 through October 1998. Some of the Plaintiffs received convertible debentures, others received equity interests, and some received both.

During the summer of 1998, Flick decided that he wanted a different royalty arrangement than the one disclosed in the business plan. According to the plan, Flick would receive three percent of the "net net" profits of the Patent; however, he refused to sign a royalty agreement consistent with the business plan. In July 1998, Flick sent a memorandum to Argentum International's CEO, Richard Westlake, requesting that Argentum International transfer the Patent to an off-shore company. In November, Flick sent two additional memoranda to Westlake requesting that the Patent be transferred to Flick individually, who would then transfer the Patent to an off-shore company. Westlake responded with several concerns: that the investors in Argentum International owned the Patent; that the Patent was the "engine" of Argentum International; that Flick's proposal would be a cause for concern for investors; that only the board of managers could make the decision to transfer the Patent; that the private placement of investments would have to stop if the board changed ownership of the Patent; and that ethical attorneys and accountants might refuse to participate in such a transaction. Westlake was fired a few months later.

In early 1999, Argentum International distributed a private placement memorandum in connection with an offer to repurchase the Plaintiffs' debentures. This offer was made because the debentures had been inadvertently issued in violation of certain registration requirements of federal and state securities laws. This private placement memorandum also showed that Argentum International owned the Patent. Although the memorandum only appears to pertain to a repurchase of debentures, according to the Defendants, all of the Plaintiffs received a copy of the memorandum, and all of the Plaintiffs could have rescinded their investments at the time of the offer. The Plaintiffs refused the rescission offer. As plaintiff Strain testified, "I elected not to go along with [the rescission offer], because as long as the assets were still in the company I was ok." Meanwhile, Flick reassured the Plaintiffs "many times" that all the promises in the business plan would be honored.

In the summer of 1999, Flick and defendant Miller began raising money with the intent of creating a new company to sell veterinary products using the silver ion process. Flick sought Miller's assistance to raise money for development of these products outside of Argentum

International, although Miller was aware that Argentum International's business plan also provided for the sale of veterinary products. Miller raised approximately half a million dollars from investors in 1999 and 2000, and the money went to Flick's majority-owned company, Argentum Research.

In May 2000, Miller sent a letter to a representative of certain creditors of Argentum International stating that Argentum International had $27,500 in assets which would be distributed to creditors owed more than $1.3 million, and that the company was being administratively dissolved. However, Argentum International was not being dissolved, and the letter did not account for value of the intellectual property owned by Argentum International. At the time this letter was sent, Argentum International was, in fact, negotiating to sell ten to twenty percent of the company for between one and three million dollars.

In March 2000, the majority of Argentum International's board of managers resigned, leaving only Flick and a co-founder on the board. That same month, Flick and Miller met with the Plaintiffs and offered them an opportunity to transfer their investments in Argentum International to another company, Argentum Professional, which would not own Argentum International's intellectual property. The Plaintiffs refused the offer to invest in Argentum Professional. During the meeting, Flick told the Plaintiffs, "don't worry about the intellectual property, we still have it." After the meeting, however, Stephens and Strain decided to check on the status of Argentum International's intellectual property. Strain searched the Fulton County lien records, which revealed that a UCC financing statement had been filed against all of Argentum International's property, "including patents and patent applications," by Flick and Miller as creditors of Argentum International. When Strain and Stephens asked Flick and Miller about the lien, they denied that the financing statement existed. This lawsuit followed in June 2000.

Also in June, Flick, in his individual capacity, attempted to license the Patent to Argentum Research, although he did not have the apparent power to license the patent in such capacity. In November 2000, Flick signed an assignment on behalf of Argentum International transferring the Patent to Argentum Research. In February 2001, Flick filed an assignment of the Patent from Argentum International, as assignor, to Argentum Research, as assignee, with the United States Patent and Trademark Office; however, the required cover sheet filed with the patent office showed the transfer to be from Flick, as assignor, to Argentum International, as assignee.

1. Our review has been hindered by the Defendants' filing of a compound enumeration of errors in violation of this Court's rules.[2] We remind counsel that

> [o]ur requirements as to the form of appellate briefs were created not to provide an obstacle, but to aid parties in presenting their arguments in a manner most likely to be fully and efficiently comprehended by this Court; a party will not be granted relief should we err in deciphering a brief which fails to adhere to the required form.[3]

We have made every effort to discern the Defendants' arguments on appeal, but those not properly supported with argument and citation of authority may be deemed abandoned.[4]

2. The Defendants claim that the trial court should have granted a directed verdict on the Plaintiffs' fraud claim because (i) the evidence was insufficient to show fraud, (ii) the Plaintiffs had abandoned their fraud claim, (iii) the Plaintiffs failed to exercise ordinary diligence, (iv) any acts rising to the level of fraud were ratified by the Plaintiffs, and (v) the Plaintiffs who held debentures were restricted to a contract claim and the Plaintiffs who held equity failed to abide by the shareholder's derivative proceeding statute.[5] A trial court should grant a directed verdict only if there is no conflict in the evidence as to any material issue and the evidence, construed most favorably to the party opposing the motion, demands a particular verdict.[6] As long as there is some evidence to support a verdict for the plaintiff, we will not overturn the denial of a defendant's motion for directed verdict.[7]

(a) The Defendants contend that they were entitled to a directed verdict because the Plaintiffs failed to prove the elements of their fraud claims. In order to recover for fraud, the Plaintiffs were required to show "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[8]

---

[2] See *Currid v. DeKalb State Court Probation Dept.*, 274 Ga. App. 704, 706 (1) (618 SE2d 621) (2005).

[3] (Punctuation omitted.) Id.

[4] See *Spooner v. City of Camilla*, 256 Ga. App. 179, 180 (1) (568 SE2d 109) (2002).

[5] OCGA § 14-2-741.

[6] See *GLW Intl. Corp. v. Yao*, 243 Ga. App. 38, 41 (3) (532 SE2d 151) (2000).

[7] See *FitzSimons v. W. M. Collins Enterprises*, 271 Ga. App. 854 (610 SE2d 654) (2005).

[8] *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000); see also OCGA § 51-6-2.

"In all cases of fraud involving a concealment of a material fact, scienter, or knowledge of the alleged falsehood, is an essential element of the tort."[9]

As to their claim for conspiracy to commit fraud, the Plaintiffs were required to show "that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy."[10] "Because civil conspiracy is by its very nature a secret endeavor, concert of action, amounting to a conspiracy, is best suited for jury resolution."[11]

In this case, there was some evidence to support each element of fraud. Flick marketed securities to the Plaintiffs, personally and through the business plan, by representing that Argentum International's major asset was the Patent, and thus induced the Plaintiffs to invest their money. There was evidence that, at the same time he was soliciting the Plaintiffs' money, Flick was attempting to transfer title to the Patent out of Argentum International, and that he eventually succeeded. Thus, the jury could conclude that Flick either misrepresented the benefit of the Patent in soliciting the Plaintiffs' investments or did not disclose the material facts surrounding his attempts to transfer the Patent, or both.[12]

The Defendants contend that Miller, in particular, failed to make any misrepresentations on which the Plaintiffs reasonably relied. However, there is at least some evidence from which the jury could conclude that, as early as the latter part of 1998, Miller had joined with Flick in a conspiracy to take the Patent from Argentum International while misleading the Plaintiffs into thinking that the basis for their investments was safe. The Plaintiffs, satisfied by Flick's many reassurances that the business plan would be followed and believing that the Patent was secure with Argentum International, did not accept the rescission offer. Meanwhile, Flick and Miller began taking steps to undermine the financial viability of Argentum International and to move the Plaintiffs' investments to a company that did not own the Patent. After the board resigned, Flick was able to transfer the Patent to Argentum Research, a venture Miller had helped to finance. Argentum International and Argentum Research helped to complete the plan through the actual transfer of the Patent.

---

[9] Id. at 894.

[10] *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 788 (3) (c) (613 SE2d 112) (2005).

[11] *Traub v. Washington*, 264 Ga. App. 541, 546 (6) (591 SE2d 382) (2003).

[12] See, e.g., *Miller v. Lomax*, 266 Ga. App. 93, 98 (2) (b) (596 SE2d 232) (2004) (evidence that defendant deliberately concealed earlier transaction with the intent of inducing plaintiff to enter into a settlement agreement precluded summary judgment to defendant on plaintiff's fraud claim).

"[A]nyone, after a conspiracy is formed, who knows of its existence and purposes and joins therein, becomes as much a party thereto as if he had been an original member."[13] Accordingly, as there was at least some evidence to support the Plaintiffs' claims for fraud and conspiracy, the trial court was not required to direct a verdict in the Defendants' favor.[14]

(b) The Defendants further contend that the Plaintiffs abandoned their fraud claims and decided to pursue only their conversion claim. More specifically, they argue that the Plaintiffs made no claim that they had been fraudulently induced into investing in Argentum International, and that the trial court therefore erred in presenting the issue to the jury over the Defendants' motion for a directed verdict.

The Plaintiffs alleged fraud in their complaint, including allegations that the Defendants misrepresented that all intellectual property referred to in Argentum International's business plan would accrue to the benefit of the investors. The Plaintiffs then presented evidence of fraud at trial, including evidence which supported the conclusion that they were fraudulently induced into making and keeping their investments. The Defendants nevertheless argue that certain statements by the Plaintiffs to the trial court show that the Plaintiffs did not intend to pursue a fraud claim. For example, the Defendants point to plaintiff Strain's statement that "our basis for this lawsuit [is] this illegal transfer of the intellectual property." However, the facts surrounding the attempted and then actual transfer of the Patent were important to all of the Plaintiffs' claims, including conversion, fraud, and conspiracy. And "[a] party may 'pursue any number of inconsistent remedies' " at trial.[15] Based upon our review of the record, the trial court was entitled to conclude that the Plaintiffs had not abandoned their fraud claims.[16]

(c) The Defendants further contend that the trial court erred in denying their motion for a directed verdict because the Plaintiffs failed to exercise ordinary diligence in making their investments. In particular, the Defendants point to evidence that plaintiff Stephens purchased an equity interest in Argentum International without reading the draft of the private placement memorandum attached thereto, although Stephens did testify that "I read what pertained to me," and that he only made the decision to invest after studying the

---

[13] (Punctuation omitted.) *Grainger v. Jackson*, 122 Ga. App. 123, 128 (2) (176 SE2d 279) (1970).

[14] See *Dunkin' Donuts of America v. Gebar, Inc.*, 202 Ga. App. 450, 452 (1) (c) (414 SE2d 683) (1992).

[15] *St. Paul Fire & Marine Ins. Co. v. Clark*, 255 Ga. App. 14, 17 (1) (566 SE2d 2) (2002).

[16] See id.

business plan. Other Plaintiffs also testified as to their review of the business plan. Absent special circumstances, a person must exercise ordinary diligence in reviewing contractual terms and representations, and failure to do so will bar an action for fraud.[17] However, "[e]xcept in plain and indisputable cases, questions of fraud and whether a plaintiff could have protected himself through the exercise of ordinary diligence are questions for a jury."[18] There was evidence to support the conclusion that the Plaintiffs exercised ordinary diligence for their protection or that ordinary diligence would not have revealed the nature of the misrepresentations. The trial court did not err in allowing the issue to go to the jury.[19]

(d) The Defendants argue that as a matter of law the Plaintiffs could not recover on their fraud claim because they ratified the allegedly fraudulent acts of the Defendants, and that the trial court therefore erred in denying the Defendants' motion for a directed verdict.[20] However, the Defendants did not move for a directed verdict on the grounds that any of the Plaintiffs had ratified the alleged fraudulent acts. " 'A motion for a directed verdict must state the *specific* grounds on which it is based, and a ground not asserted cannot thereafter be raised on appeal.' "[21] The issue is therefore waived.[22]

(e) The Defendants assert that the Plaintiffs who held debentures were restricted to a contract claim because they demanded a repayment of sums due under the debenture as part of their amended complaint. They also contend that the Plaintiffs who held equity had no claim because they failed to pursue a derivative action on behalf of Argentum International. We disagree.

The debenture-holding Plaintiffs did not seek rescission in their complaints, sought only monetary damages at trial, and therefore must be considered to have affirmed the debentures.[23] However, they "may affirm the contract and sue for damages resulting from the

---

[17] See *Dunlap v. First Rock Credit Corp.*, 194 Ga. App. 563, 565 (2) (390 SE2d 919) (1990).

[18] *Lester v. Bird*, 200 Ga. App. 335, 338 (1) (408 SE2d 147) (1991).

[19] See *Clark v. Byrd*, 254 Ga. App. 826, 827-828 (1) (a) (564 SE2d 742) (2002).

[20] See, e.g., *Bloodworth v. Bloodworth*, 225 Ga. 379, 387 (2) (b) (169 SE2d 150) (1969) (where stockholders participate in the performance of an act, or acquiesce in and ratify the same, they are estopped to complain).

[21] (Emphasis in original.) *Alta Anesthesia Assoc. of Ga. v. Gibbons*, 245 Ga. App. 79, 82 (1) (537 SE2d 388) (2000); see also *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002).

[22] *College Park Cabs, Inc. v. Justus*, 227 Ga. App. 66, 70 (4) (488 SE2d 88) (1997).

[23] *Markowitz v. Wieland*, 243 Ga. App. 151, 153 (1) (532 SE2d 705) (2000) (plaintiff affirmed contract in complaint by seeking only money damages and failing to seek rescission).

fraud.... [T]he defrauded party may keep the benefits of the contract and still maintain an action for damages suffered because of the fraud."[24]

As for the equity-holding Plaintiffs, "in order to have standing to sue individually rather than derivatively on behalf of a corporation, a shareholder must allege a 'special injury,' i.e., an injury different from and more than the wrong to the corporation."[25] In this case, the equity-holding Plaintiffs' claims for fraud and conspiracy are personal to them.[26] Indeed, the Plaintiffs' fraud claims are not dependent on characterization of their investments as either debt or equity.[27] It follows that the Defendants' contention has no merit.

3. The Defendants contend that the trial court erred in charging the jury that a confidential relationship with one or more of the Defendants would relieve the Plaintiffs from exercising ordinary care for their own protection. The Defendants assert that there was no evidence of a confidential relationship that would justify giving this charge. " 'A charge on a given subject is justified if there is even slight evidence from which a jury could infer a conclusion regarding that subject.' "[28]

Here, Flick was a member of the board of managers of Argentum International, and, as such, owed a fiduciary duty to those Plaintiffs who held equity interests.[29] "It is well settled that corporate officers and directors have a fiduciary relationship to the corporation and its shareholders and must act in good faith."[30] Thus, as there was some

---

[24] *Keller v. Henderson*, 248 Ga. App. 526, 528 (2) (545 SE2d 705) (2001). There is no merger provision in the debentures which would preclude the Plaintiffs from relying on prior representations in their fraud claim. See *Authentic Architectural Millworks v. SCM Group USA*, 262 Ga. App. 826, 828-829 (2) (b) (586 SE2d 726) (2003); compare *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 469 (3) (610 SE2d 352) (2005) (merger clause in contract precluded tort claim based on pre-contract representations).

[25] *William Goldberg & Co. v. Cohen*, 219 Ga. App. 628, 638 (6) (b) (466 SE2d 872) (1995).

[26] See *Grace Bros., Ltd. v. Farley Indus.*, 264 Ga. 817, 819-820 (2) (450 SE2d 814) (1994) (direct action appropriate where there has been an injury to only certain shareholders); *Bogle v. Bragg*, 248 Ga. App. 632, 638 (3) (548 SE2d 396) (2001) (fraud claim by shareholder based on representations made to him may be brought individually; however, claim that corporate directors mismanaged company must be brought as shareholder derivative action).

[27] See *William Goldberg*, supra at 638-639 (6) (b) (plaintiff's status as a shareholder was incidental to his injury as a guarantor of corporate debt).

[28] *Gates v. Navy*, 274 Ga. App. 180, 183 (4) (617 SE2d 163) (2005).

[29] See OCGA § 14-11-305 (1) ("[a] member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances"). Although a member or manager's fiduciary duties may be expanded, restricted, or eliminated by a limited liability company's operating agreement, the Defendants do not claim such a limitation here, and in any case, the liability of a manager may not be limited for intentional misconduct. OCGA § 14-11-305 (4) (A) (i).

[30] (Punctuation omitted.) *Paul v. Destito*, 250 Ga. App. 631, 635 (1) (550 SE2d 739) (2001).

evidence that Flick misrepresented or omitted material facts concerning the benefit of the Patent to the Plaintiffs' investments, a charge as to the law on the effect of a confidential relationship was appropriate.[31] Accordingly, we find no error.

4. The Defendants also claim that the trial court erred in failing to grant their motion for a directed verdict on the Plaintiffs' conversion claim. "Conversion is the unauthorized assumption and exercise of the right of ownership over personal property belonging to another."[32] The Defendants argue that the Patent allegedly converted belonged not to the Plaintiffs but to Argentum International. Accordingly, the Defendants assert that the Plaintiffs who held debentures could not sue for conversion of an asset that they did not own, and that the Plaintiffs who were equity owners could only pursue a shareholders' derivative action, which they failed to do. The Defendants also argue that the Plaintiffs presented no evidence of the fair market value of the Patent. However, we need not address these arguments because the jury's verdict, which failed to distinguish between the Plaintiffs' theories of recovery, was sustainable on the Plaintiffs' claims for fraud and conspiracy. Thus, even if the trial court did err in failing to grant the Defendants' motion for directed verdict as to the conversion claim, the Defendants would not be entitled to a new trial.[33]

5. The Defendants claim the trial court erred in failing to grant a directed verdict on the Plaintiffs' claims for punitive damages. This assertion has no merit because fraud will support a punitive damages award.[34]

6. The Defendants contend that the trial court erred in denying their motions for summary judgment. However, "[a]fter verdict and judgment, it is too late to review a judgment denying a summary judgment, for that judgment becomes moot when the court reviews the evidence upon the trial of the case."[35]

7. Finally, the Defendants contend that the trial court erred in denying their motion for a new trial. They expressly rely on their previous arguments and present nothing new to support this assignment of error. Accordingly, we conclude that the claim is abandoned.

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

---

[31] See *Jones v. Sperau*, 275 Ga. 213, 214 (2) (563 SE2d 863) (2002).

[32] *GLW Intl.*, supra at 42 (3) (b).

[33] See *Telcom Cost Consulting v. Warren*, 275 Ga. App. 830, 835 (3) (621 SE2d 864) (2005).

[34] *Bienert v. Dickson*, 276 Ga. App. 621, 625 (3) (624 SE2d 245) (2005) ("Wilful misconduct or fraud justifies a punitive damages award.").

[35] (Citation and punctuation omitted.) *Kicklighter v. Woodward*, 267 Ga. 157, 162 (4) (476 SE2d 248) (1996).

DECIDED JULY 12, 2006.

*Cummings & Dillard, Michael H. Cummings II,* for appellants. *Cathey & Strain, Edward E. Strain III, Stephens & Shuler, Charles W. Stephens, Kimzey, Kimzey & York, M. Keith York, Caudell & Hotard, B. Chan Caudell,* for appellees.