A01A0039. LEDEE v. DEVOE.
(549 SE2d 167)

MIKELL, Judge.
William A. Ledee appeals the trial court's denial of his motion for judgment notwithstanding the verdict. Bertha Devoe filed this action against Ledee and two co-defendants, Martin Findley and James L. Gray, alleging fraud, breach of contract, breach of fiduciary duty, negligence, negligence per se based on the unauthorized practice of law, conspiracy, and negligent and intentional infliction of emotional distress. The court entered summary judgment in favor of Gray, and the case proceeded to trial against Ledee and Findley. The jury returned a general verdict in favor of Devoe, awarding $10,000 in compensatory damages and $100,000 in punitive damages against Ledee.[1] The court denied Ledee's motion for j.n.o.v. We affirm.

It is well settled that the standard of appellate review of the denial of a motion for j.n.o.v. is the any evidence test. *Pulte Home Corp. v. Woodland Nursery &c.,* 230 Ga. App. 455, 456 (2) (496 SE2d 546) (1998).

> The question before this court is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded. A judgment n.o.v. is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion.

(Citations and punctuation omitted.) Id. See also *Ruben's Richmond Dept. Store v. Walker,* 227 Ga. App. 867 (490 SE2d 536) (1997); *Professional Consulting Svcs. of Ga. v. Ibrahim,* 206 Ga. App. 663, 665 (1) (426 SE2d 376) (1992).

---

[1] The jury also awarded $5,000 in compensatory damages and $50,000 in punitive damages against Findley, but he has not filed an appeal.

Viewed in the light most favorable to the jury's verdict, the evidence shows that in June 1993, believing Ledee to be an attorney, Devoe hired him to represent her in a premises liability case against A&P Food Stores, Inc. ("A&P"). Devoe was referred to Ledee by Findley, whom Devoe met while she was employed as a janitor in his office building. Findley was a lawyer at the time he made the referral; however, he was suspended from the practice of law on February 21, 1994. According to Devoe, Findley told her that he could not handle her case, but that he knew a lawyer who was "like a daddy" to him who would help her. Findley told Devoe that Ledee had won a $50,000 verdict in a similar case and wrote down Ledee's name and telephone number for her. It is undisputed that Ledee is not and has never been a licensed attorney.

When Devoe met Ledee at his office, he told her that he was her lawyer and presented her with an attorney-client agreement to sign. The agreement Devoe signed actually belonged to Gray, a licensed attorney who operated his practice out of Ledee's office. Devoe cannot read; therefore, she did not realize that the agreement had Gray's name on it. Devoe testified that "[Ledee] said that he was my lawyer." Devoe further testified that she believed that Ledee represented her as her attorney and that she did not hire Gray or Findley.

Devoe further testified that she attempted to contact Ledee regarding the status of her case on numerous occasions; however, he was consistently unavailable. She testified that on one occasion when she was actually able to reach him, Ledee handed the telephone to Findley, who told Devoe not to call "Lawyer Ledee" so often because he was very busy.

The complaint against A&P was filed by Findley on February 23, 1994,[2] approximately eight months after Devoe met with Ledee for the first time and one day prior to the expiration of the statute of limitation. Service was never perfected on A&P, and the case was dismissed on August 3, 1994, for want of prosecution, with costs to be taxed against the plaintiff. Devoe did not learn that her case had been dismissed until more than 30 days later, when her son contacted the court clerk's office. Devoe attempted to reach Ledee and Findley; however, neither would accept her calls. At the time, Devoe was working as a maid in Findley's home, so she was able to contact him that night, and he informed her that "[Ledee] just didn't do his job." Devoe could not refile her action because the statute of limitation had expired.

Richard Isbill, a claim supervisor for an independent adjusting

---

[2] Findley had been suspended from the practice of law prior to filing the complaint on behalf of Devoe.

firm retained by A&P to handle the Devoe claim, testified that Ledee presented himself as Devoe's attorney. A June 8, 1993 entry in the claim file states: "Attorney Bill Liddi [sic] of Gray & Associates called [and] said he will now be representing Bertha Devoe." Ledee admitted that he told the adjusting firm that he was with the firm of Gray & Associates. He explained that "Martin [Findley] told me to lie." Isbill testified that his firm had offered to settle Devoe's claim against A&P for $5,500. He further testified that because the statute of limitation expired on Devoe's claim, no money would be offered or paid to her in the future. Devoe testified that she did not know about the settlement offer.

There was additional evidence presented at trial that Ledee held himself out as a licensed attorney and that he exhibited a pattern of misleading behavior. For instance, the name of Ledee's business was "Ledee & Associates," and his listing in the business section of the Atlanta telephone directory read "Ledee, William, atty" from 1992 through 1999. Ledee admitted using the fictitious name "Jim Reynolds" in the course of his business. Furthermore, Ledee was convicted of six counts of causing to be transported in interstate commerce falsely made and forged securities, in violation of 18 USC § 2314.[3]

The precise relationship between Ledee, Findley, and Gray was less than clear. Ledee admitted that Findley was an employee of Ledee & Associates at the time Devoe's complaint was filed, and that Findley took direction from Ledee. The evidence also shows that Ledee provided office space and support staff to Gray free of charge, and that the telephone number on Gray's letterhead was the same as that of Ledee & Associates. Ledee admitted at trial that Gray, the only licensed attorney in their office, never represented Devoe and that Gray did not give Ledee the authority to use his name or letterhead. Several letters were sent to Devoe's health care providers on Gray's letterhead, and one appeared to have been signed by Gray; however, Ledee admitted that they were not sent by Gray.

1. First, Ledee argues that the court erred in denying his motion for j.n.o.v. because Devoe failed to establish the elements of fraud. We disagree and find that there was an evidentiary basis for the jury's verdict on this claim.

The tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages. *ReMax North Atlanta v. Clark*, 244 Ga. App. 890, 893 (537 SE2d 138) (2000); *Klusack v. Ward*, 234 Ga. App. 178,

---

[3] Ledee's conviction was affirmed in *United States v. Ledee*, 549 F2d 990 (5th Cir. 1977).

179 (1) (507 SE2d 1) (1998); OCGA § 51-6-2. We conclude that there was evidence to support each element of Devoe's fraud claim against Ledee.

First, there was evidence that Ledee falsely represented to Devoe and others that he was an attorney who was handling her case against A&P. Specifically, Devoe testified that Ledee told her that he was her attorney and that he had successfully handled a similar case. Additionally, Isbill testified that Ledee presented himself as Devoe's attorney in their discussions regarding her claim.

Next, the requirement of scienter was satisfied, as the record demonstrated that Ledee knew that he was not an attorney at the time that the false representations were made. Scienter is rarely evidenced by direct proof, and here Ledee admitted that he was not a licensed attorney. See *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 596 (10) (533 SE2d 136) (2000). Therefore, there was some evidence from which the jury could find that Ledee made a misrepresentation to Devoe that he knew was false.

Third, the record demonstrates Ledee's intention to induce Devoe to act or refrain from acting. Specifically, there was evidence that Ledee intentionally induced Devoe to sign an attorney-client contract to retain his services, which caused her, to her detriment, to refrain from hiring a licensed attorney.

Fourth, there was an evidentiary basis for the finding of justifiable reliance, based on the representations of Ledee and Findley that Ledee was an attorney who had successfully pursued a similar case. Considering evidence that Devoe was illiterate and unsophisticated, the jury could reasonably conclude that her reliance on the assurances of Ledee and Findley was justifiable.

Finally, there was evidence that Devoe suffered damages as a result of Ledee's fraudulent conduct. Specifically, Devoe was damaged by the dismissal of her claim against A&P. Furthermore, Isbill testified that there was actually an insurance "reserve" of $7,500 that would have been available to settle Devoe's claim against A&P; however, that money was no longer available to her because the statute of limitation had expired on the premises liability claim. Additionally, the costs of the underlying action were taxed against Devoe in the trial court's order of dismissal of the claim against A&P. There was also evidence that Devoe suffered emotional distress.

Accordingly, because there was an evidentiary basis for the jury's verdict as to all five elements of the fraud claim, we affirm the court's denial of Ledee's motion for j.n.o.v.

2. Next, Ledee argues that a j.n.o.v. should have been entered because Devoe failed to prove that she could have recovered in the underlying premises liability case against A&P. We disagree and find that Devoe presented adequate evidence to support the viability of

her underlying claim.

In order to prove negligence in a slip and fall premises liability case, a plaintiff must demonstrate that "(1) the defendant had actual or constructive knowledge of the foreign substance and (2) the plaintiff lacked knowledge of the substance or for some reason attributable to the defendant was [prohibited] from discovering it." (Footnote omitted.) *Shepard v. Winn Dixie Stores*, 241 Ga. App. 746, 747 (1) (527 SE2d 36) (1999).

Contrary to Ledee's argument, there was adequate evidence to support both elements of the underlying premises liability claim. The record shows that on February 24, 1992, Devoe slipped while walking through the deli department of an A&P store.[4] Irvin Steerman, who was employed by the store from 1961 until May 24, 1999, testified that he was walking behind Devoe and actually saw her slip. Devoe testified that she did not see the substance before she slipped. There was evidence that A&P had actual knowledge of the foreign substance, as Steerman testified that Devoe slipped on something that "looked like grease, or a little water, or something that was kind of greasy."

Furthermore, there was ample evidence that A&P had constructive knowledge of the hazard. Constructive knowledge may be demonstrated by showing that a store employee "was in the immediate area of the hazard and could have easily seen the substance" or that "the foreign substance remained long enough that ordinary diligence by [A&P] should have discovered it." (Footnote omitted.) *Shepard,* supra at 747. In the case sub judice, there was evidence to establish constructive knowledge by either method. First, Steerman testified that he was in the immediate area of the hazard and actually saw Devoe slip on the foreign substance. Additionally, there was evidence that A&P did not have a specific inspection procedure in place at the time of the accident. "Constructive knowledge may be inferred when there is evidence that the owner lacked a reasonable inspection procedure." (Punctuation and footnote omitted.) Id. at 748 (1). Accordingly, the court did not err in denying the motion for j.n.o.v. on this ground.

3. Ledee also contends that the court erred in denying his motion for j.n.o.v. because there was no evidence of a causal connection between his acts and omissions and Devoe's damages. He first argues that the proximate cause of the dismissal of Devoe's underlying case was Findley's failure to perfect service on A&P. According to Ledee, even if Devoe hired him as her attorney, Findley became her substi-

---

[4] Devoe slipped but recovered her footing and did not actually fall. She testified that her foot and ankle were injured when she slipped.

tuted counsel following the filing of the complaint.

We reject Ledee's argument and find his reliance on *Meiners v. Fortson & White*, 210 Ga. App. 612 (436 SE2d 780) (1993), to be misplaced. In *Meiners,* a legal malpractice case, the plaintiff actually fired her first lawyer and hired a second one, and the attorneys in the case were licensed to practice law. In the case sub judice, Devoe hired Ledee as her lawyer and never believed that Findley represented her. Additionally, Ledee admitted that Findley was actually an employee of Ledee & Associates at the time Devoe's complaint was filed, and that Findley took direction from Ledee. Therefore, we do not agree that Findley became Devoe's substituted counsel.

Next, Ledee argues that Devoe's own acts and omissions somehow caused the dismissal of her case against A&P. This argument is patently without merit. We conclude that there was an evidentiary basis for the jury's determination that Ledee's acts and omissions were the proximate cause of the dismissal of Devoe's underlying claim against A&P.

4. Ledee argues that j.n.o.v. was appropriate because there was no evidence to support Devoe's conspiracy claim. We disagree.

"A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." (Citation and punctuation omitted.) *First Fed. Sav. Bank v. Hart*, 185 Ga. App. 304, 305 (2) (363 SE2d 832) (1987). See also *Rose v. Zurowski*, 236 Ga. App. 157-158 (1) (511 SE2d 265) (1999). In order to recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct which constitutes a tort. *Savannah College of Art &c. v. School of Visual Arts of Savannah*, 219 Ga. App. 296, 297 (464 SE2d 895) (1995). We conclude that there was an evidentiary basis for the jury's determination that Ledee and Findley engaged in tortious conduct in concert, as shown by the facts summarized above and the extensive record. Accordingly, the court properly denied Ledee's motion for j.n.o.v. on the civil conspiracy claim.

5. Next, Ledee argues that the trial court should have granted a j.n.o.v. because any judgment against A&P in the underlying case would not have been collectible. We reject this argument.

First, Devoe could have recovered at least $7,500 from A&P, as evidenced by the adjuster's testimony that his firm held that amount in reserve to settle Devoe's claim on A&P's behalf. Furthermore, because the jury returned a general verdict, it is possible that the award of damages was actually based on the fraud claims against Ledee and Findley, which would not be affected by the solvency of A&P. See *Alternative Health Care Systems v. McCown*, 237 Ga. App. 355, 356 (2) (514 SE2d 691) (1999).

6. Likewise, we reject Ledee's argument that Devoe failed to

present evidence warranting the award of punitive damages. OCGA § 51-12-5.1 (b) provides: "Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." The facts summarized above and the extensive record provide clear and convincing evidence to support the jury's award of punitive damages.

7. Ledee contends that the court erred in accepting the jury's general verdicts, because the jury awarded compensatory damages in the amount of $5,000 against Findley and $10,000 against Ledee. Ledee argues that the inconsistent verdicts arose out of the same conduct and were based on the same evidence; therefore, the court should have refused to accept them and directed the jury to continue its deliberations. We do not agree.

It is well settled that a strong presumption exists in favor of the validity of jury verdicts. *NEDA Constr. Co. v. Jenkins*, 137 Ga. App. 344, 347-348 (2) (223 SE2d 732) (1976). "The verdict[s] may be construed in the light of the pleadings, the issues made by the evidence and the charge. (Cits.) . . . [I]f possible a construction will be given which will uphold them." (Punctuation omitted.) *Harrison v. Martin*, 213 Ga. App. 337, 344 (1) (444 SE2d 618) (1994), citing *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864, 869-870 (3) (198 SE2d 420) (1973). Accord *Haughton v. Judsen*, 116 Ga. App. 308, 310 (157 SE2d 297) (1967).

As in the case at bar, when two or more verdicts "do not manifest that the jury reached conflicting opinions on the same evidence or the same witnesses," we will not disturb them. *John D. Robinson Corp. v. Southern Marine &c. Co.*, 196 Ga. App. 402, 406 (5) (395 SE2d 837) (1990). Compare *Bagwell v. Sportsman Camping Centers*, 130 Ga. App. 888, 890-891 (204 SE2d 794) (1974). Additionally, when a jury does not "specify upon which count . . . the verdict was rendered," the verdict will not be subject to attack if it was "authorized by the evidence under [any of the] counts." *Whitaker v. Creedon*, 99 Ga. App. 228, 233 (4) (108 SE2d 335) (1959). The fact that the jury found Ledee to be more culpable than Findley and thus awarded a larger portion of the compensatory damages against him did not render the verdicts inconsistent. Accordingly, the court did not err in receiving the verdicts.

8. Finally, Ledee argues that it was error for the court to charge the jury on negligence per se. He contends that there was no evidence in the record demonstrating a causal connection between his unauthorized practice of law and Devoe's loss. This argument has no merit.

OCGA § 15-19-51 (a) (3) provides: "It shall be unlawful for any person other than a duly licensed attorney at law . . . [t]o hold himself out to the public or otherwise to any person as being entitled to practice law." It is well settled that the violation of a state statute that results in the injury of another person constitutes negligence per se. *Edmond v. Roberson*, 207 Ga. App. 101, 102-103 (2) (427 SE2d 74) (1993); *Green v. Gaydon*, 174 Ga. App. 796, 798 (3) (331 SE2d 106) (1985).

There is ample evidence in the record that Ledee's unauthorized practice of law was the direct cause of Devoe's injuries. Furthermore, "[i]t is the duty of the court to charge the jury on the law as to every controlling, material, substantial[,] and vital issue in the case." *Pritchett v. Anding*, 168 Ga. App. 658, 663 (6) (310 SE2d 267) (1983). Accordingly, the court did not err in charging the jury on negligence per se.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED MAY 10, 2001 —
RECONSIDERATION DENIED JUNE 8, 2001 —

*Cauthorn & Associates, Thomas E. Cauthorn III, Melissa M. Nohr, Awtrey & Parker, Harvey D. Harkness,* for appellant.

*Slappey & Sadd, James N. Sadd, William A. Dupre IV, Charles A. Evans,* for appellee.