A04A2007. HOWARD et al. v. BARRON et al.
(612 SE2d 569)

ADAMS, Judge.

Under Georgia law, misrepresentation of or failure to disclose the zoning on property for sale cannot serve as a basis for a fraud action.[1] The main issue in this case is whether John and Beverly Howard, an elderly couple who purchased a piece of property for their mobile home, can avoid the effect of this law. A related issue is whether the Howards presented any evidence that they developed a confidential relationship with Linda Barron, one of the sellers and also the real estate agent for the transaction.

The Howards sued Barron and her husband for fraud and breach of a confidential or fiduciary relationship, and the case went to trial before a jury. After the Howards rested their case, the trial court granted the Barrons' motion for a directed verdict, and the Howards appeal. "A directed verdict is authorized only when there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict." (Citation and punctuation omitted.) *Carden v. Burckhalter,* 214 Ga. App. 487, 488 (1) (b) (448 SE2d 251) (1994). On appeal, we conduct a de novo review and will uphold the grant of a directed verdict only if all the evidence demands it. Id.

The evidence presented at trial shows that Barron and her husband owned a 9.785-acre tract of land in Bartow County on which they resided for about six years. Barron was a licensed real estate agent, and she knew that the property was zoned A1-Agricultural and that the zoning required a minimum five-acre tract for each home. At one point, their daughter also resided on the property in a separate mobile home, and Barron was aware that her daughter had sought

---

[1] *Lakeside Investments Group v. Allen,* 253 Ga. App. 448 (559 SE2d 491) (2002).

and received a "kinship" exception from the county zoning administrator to allow placement of a second home on the property. Before the relevant events, the daughter moved away and removed the mobile home.

In July or August 2000, the Howards, who had never before purchased property other than from a family member, were seeking a lot for their own mobile home, and they were given information to call Barron. Upon their first phone call, Barron said that she had an acre for sale that was ready for a mobile home, including electricity, water, and a septic tank. The Howards went to see the property and saw that it was configured to hold a mobile home. Barron mentioned that her daughter previously had a mobile home at the site. The Howards agreed to buy the property.

Unbeknownst to the Howards, Barron then called Ray Sullivan, the director of planning, zoning and code enforcement for the county. Sullivan testified that Barron inquired about placing an additional mobile home on the property to replace her daughter's home, but she did not mention selling any property. She stated that she just wanted to move an elderly couple onto her own property in the same location as the daughter's home, which, Sullivan testified, would have conformed with A-1 zoning.

On August 18, Barron accompanied the Howards to the zoning office in connection with obtaining a permit to place the mobile home on the property. She told the Howards that she knew Sullivan, and that she had already twice spoken to him about them, including that they were an elderly couple with a medical problem. When they arrived, Barron said to the Howards, "Let me do all the talking." When Barron saw Sullivan, she said, "Ray, [these are] the people I was telling you about," whereupon Sullivan told the clerks to take care of them.

Mr. and Mrs. Howard filled out an application. Meanwhile, in connection with the application, Barron gave Sullivan a plat of the entire 9.785-acre tract. According to Sullivan, Barron never told him about the intended one-acre sale. Barron testified that she had previously told Sullivan that she intended to sell the Howards a one-acre lot but that she did not have the survey of the lot yet. According to Barron, Sullivan had told her to bring the survey of the entire parcel. The one-acre tract was surveyed the same day that everyone visited the zoning office.

Sullivan testified that based on the conversations and the submitted paperwork, the Howards were issued a permit to place the mobile home on the property, but the permit was issued based on the lot being 9.785 acres, not one acre. He testified that he never saw a plat showing the one-acre tract before the Howards received their permit, and the permit would not have been issued if he had because

A-1 zoning requires a minimum of five acres for any type of home. He only learned after the Howards moved onto the site, and a neighbor complained, that property had changed hands.

On August 21, three days after the trip to the zoning office, the parties entered into a sales contract with a purchase price of $25,000. The agreement shows that Barron was a seller and the sellers' agent. The closing occurred on August 31. According to the Howards, Barron never mentioned the five-acre requirement between August 21 and August 31, or at any time before that. Barron received a real estate commission on the transaction.

After they moved their home to the site, the Howards were notified of a zoning problem. When they spoke to Barron, she said, "Don't worry about it, I've talked to Ray Sullivan, everything is going to be okay." Barron learned that the Howards needed to have the property rezoned. Barron repeatedly said that she would take care of it. The Howards continued to spend money on the place after learning of the problem.

Barron accompanied the Howards to the Bartow County Zoning Commission meeting on November 6 in connection with the Howards' application for rezoning, and she had a conversation with Sullivan prior to the meeting. Based on that conversation, she told the Howards that everything was going to be fine. She admits that at the commission meeting, she spoke on behalf of the Howards. But the rezoning was not successful, and the next day, Barron spoke to Commissioner Clarence Brown on the Howards' behalf, but to no avail. The Howards eventually had to move their home, and they later sold the property for $10,000.

1. From the evidence presented and all reasonable deductions a jury could conclude that Barron intentionally concealed from the Howards the zoning issue in an attempt to get them to purchase the property. The trial court held that, nevertheless, the Howards' fraud claim was barred by *Lakeside Investments Group*, 253 Ga. App. 448, and we agree.

In *Lakeside*, the seller's agent induced the purchasers to buy property by misrepresenting the zoning status of the property. This Court held that because zoning is a matter of law, misrepresentation of or failure to disclose the zoning on property for sale cannot serve as a basis for a fraud action. Id. at 450 (1). See also *Gignilliat v. Borg*, 131 Ga. App. 182, 183-187 (205 SE2d 479) (1974) (suit against seller). As stated in *Lakeside*:

[A] misrepresentation as to a matter of law "is a statement of opinion only and can not afford a basis for a charge of fraud or deceit in the making of the contract." This is because all persons are presumed to know the law and therefore cannot

be deceived by erroneous statements of law. Since zoning is a legislative function of the county, "whether land has been zoned, and if so, the uses which may be made of the land under the applicable law or ordinance (are) a matter of law" and therefore cannot serve as a basis for a fraud action.

(Footnotes omitted.) Id. at 450 (1). The rule applies regardless of whether the seller or agent has concealed *or* misrepresented the zoning status. Id. at 451 (1). The Howards admitted that they made no effort on their own to determine the zoning for the property despite the fact that the information was equally available to them. We find no error in the trial court's decision to grant a directed verdict on the fraud claim. See *Hill v. Century 21 Max Stancil Realty*, 187 Ga. App. 754, 756 (2) (371 SE2d 217) (1988) (affirming the trial court's grant of summary judgment due to purchaser's failure to ascertain for himself the zoning status of the property).

The Howards contend that their case involves something more than fraud because the facts show that, "using artifice and superior knowledge," Barron "enticed" an elderly couple, induced them to rely on her with regard to the permit process, and made misrepresentations to the zoning office in an intentional scheme to defraud them. But, properly considered, this argument goes to whether the Howards and Barron entered into a confidential relationship, which is the subject of the next division.

2. The Howards contend that the trial court should have submitted to the jury the issue of whether the Howards entered into a confidential relationship with Barron. "Under Georgia law, a confidential relationship imposes a greater duty on the parties to reveal what should be revealed and a lessened duty to discover independently what could have been discovered through the exercise of ordinary care. *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847-848 (507 SE2d 411) (1998)." *Yarbrough v. Kirkland*, 249 Ga. App. 523, 526 (548 SE2d 670) (2001).

The existence of a confidential relationship is generally a factual matter for the jury to resolve:

Although a buyer is generally not justified in relying on a seller's claims regarding real estate, a jury issue may exist as to whether a confidential relationship between the parties abrogates the general rule. Because a confidential relationship may be found whenever one party is justified in reposing confidence in another, the issue of whether a confidential relationship has been created is ordinarily reserved for the jury.

(Citations omitted.) *Yarbrough*, 249 Ga. App. at 527 (2). But, where the facts are patent, unambiguous, and undisputed, the trial court may decide the issue of a confidential relationship as a matter of law. *Middleton v. Troy Young Realty*, 257 Ga. App. 771, 773 (572 SE2d 334) (2002).

A confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc." OCGA § 23-2-58. But, "[t]he mere fact that one reposes trust and confidence in another does not create a confidential relationship. In the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone." (Citation and punctuation omitted.) *Lewis v. Alderman*, 117 Ga. App. 855 (1) (162 SE2d 440) (1968). Similarly, "the mere circumstance that two people have come to repose a certain amount of trust and confidence in each other as the result of business dealings is not, in and of itself, sufficient to find the existence of a confidential relationship." (Citations omitted.) *Parello v. Maio*, 268 Ga. 852, 853 (1) (494 SE2d 331) (1998). Finally, the party asserting the existence of a confidential relationship bears the burden of establishing it. *O'Neal v. Home Town Bank of Villa Rica*, 237 Ga. App. 325, 330 (5) (514 SE2d 669) (1999).

In this case, we have the unusual claim that the seller and buyer in a real estate transaction developed a confidential relationship in connection with the transaction. See *Lewis*, 117 Ga. App. 855 (presumption that buyer and seller deal at arm's length). Nevertheless, we find that there is an issue of fact regarding whether Barron exercised a controlling influence over the Howards with regard to their application for a permit to place a mobile home on the property, which may have kept the Howards from discovering that their intended use of the property was prohibited by the current zoning or which may have increased Barron's duty to reveal the current zoning to the Howards.

Although Barron testified that she told the Howards to contact the zoning office to make sure they could place their mobile home on the property, facts were presented from which a jury could determine that Barron took the initiative to contact Sullivan at the zoning office about the mobile home permit without telling the Howards, yet she may have concealed the true nature of the transaction from him. She told the Howards that she had spoken to Sullivan about their permit, and when she accompanied them to the zoning office, she told them to let her do all the talking. And the Howards may have consented to her actions on their behalf by doing what they were told. Barron then

dealt with Sullivan on their behalf, including submitting a survey to him that did not represent the parcel that the Howards were purchasing. As a consequence, prior to the parties entering into a sales contract, the Howards were able to obtain a permit to move a mobile home onto the property. When the issue resurfaced, Barron continued to reassure the Howards that she was in contact with Sullivan and that everything would work out.

This evidence was sufficient to create an issue of fact regarding whether the parties had a confidential relationship with regard to the permitting process that may have lessened the Howards' duty to discover independently that the property was not zoned for their intended use or increased Barron's duty to disclose. See generally *Yarbrough*, 249 Ga. App. at 526 (jury issue existed as to whether buyer/business associate of seller was in a confidential relationship with seller/mortgage broker of buyer).

The trial court's order suggests that because the facts showed no agency relationship, there could be no confidential relationship. But a "confidential relationship giving rise to a fiduciary duty is not limited to that between a principal and agent. See OCGA § 23-2-58." *Physician Specialists in Anesthesia v. Wildmon*, 238 Ga. App. 730, 733 (521 SE2d 358) (1999).

The trial court also relied on *Lewis v. Alderman* in which this Court made clear that "[t]he vendor and vendee of property are not, by virtue of such fact, placed in a confidential relationship to each other, but on the contrary are presumed to be dealing at arm's length. [Cit.]" 117 Ga. App. at 855 (2). But here, we find that the Howards have rebutted that presumption by showing that they may have had a confidential relationship with Barron with regard to the permitting process. In *Lewis*, the seller had only represented that he was familiar with the legal requirements of a contract of sale and that the contract that he had drawn up was legally sufficient, which later proved to be incorrect. In the present case, Barron may have acted on the Howards' behalf vis-à-vis a third party in such a way that material information was concealed from them.

No evidence was presented to show that the Howards had a confidential relationship with Mr. Barron. And therefore the judgment with regard to him is affirmed in full.

*Judgment affirmed in part and reversed in part. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 22, 2005.

*Mary F. McCord*, for appellants.

*White, Choate & Watkins, Robert W. Lamb, Perrotta, Cahn & Prieto, Hannibal F. Heredia*, for appellees.