A05A1970. DOUGLAS et al. v. BIGLEY.
(628 SE2d 199)

RUFFIN, Chief Judge.

Angela Bigley, individually and as trustee of the Angela R. Bigley Revocable Living Trust ("Bigley"), sued Michael Douglas, Pamela Douglas, Future Settlement Funding of Georgia, Inc. ("FSF"), and Expertfunding.Com Corporation ("Expertfunding") for various claims, including breach of contract, rescission, breach of fiduciary duty, and fraud. The case proceeded to trial, and the jury returned a general verdict against all defendants for damages, plus attorney fees and litigation expenses. The defendants appeal, claiming that the trial court erred in denying their motions for judgment notwithstanding the verdict. For reasons that follow, we reverse the judgment and remand for a new trial as to the tort claims against FSF and the Douglases.

---

In reviewing the denial of a motion for judgment notwithstanding the verdict ("j.n.o.v."), we apply the any evidence test.[1] We consider

> not whether the verdict and the judgment of the trial court were merely authorized, but . . . whether a contrary judgment was demanded. A [j.n.o.v.] is properly granted only when there can be only one reasonable conclusion as to the proper judgment; if there is any evidentiary basis for the jury's verdict, viewing the evidence most favorably to the party who secured the verdict, it is not error to deny the motion.[2]

Construed in this manner, the evidence shows that Bigley and the Douglases became neighbors in 1993, and Bigley began spending time with Mrs. Douglas, who referred to Bigley as her "best friend." Noting that the Douglases "seemed very successful," Bigley asked them about their investments and sought investment advice. In 1997, Mr. Douglas inquired whether Bigley wanted to invest in a business owned by one of his clients, and Bigley agreed to invest.

At the Douglases' invitation, Bigley attended a seminar later that year on litigation funding investment opportunities, which involved advancing money to individuals bringing personal injury claims. After the seminar, and based on advice from the Douglases, Bigley invested in a litigation funding entity known as Settlement Marketing, Inc. The Douglases then created their own company to fund personal injury cases, FSF, and approached her about investing. Believing that her other investments were performing well, Bigley decided to invest in the individual cases funded by FSF beginning in July 1998.

According to Bigley, her responsibility with respect to FSF was "just [to] come up with the money," while the Douglases invested the money in "good" personal injury cases. Bigley testified that the cases FSF invested in were "supposed to be seasoned," or pending for at least one or two years. In other words, FSF would not fund a claimant's case immediately after the injury; it would first evaluate the claim to determine whether it was a "good case or not." Mr. Douglas, who was FSF's marketing consultant, told Bigley that the injured party would pay back the money advanced by FSF, plus

---

[1] See *Ledee v. Devoe*, 250 Ga. App. 15 (549 SE2d 167) (2001).
[2] (Punctuation omitted.) Id.

interest, once the case settled. Bigley would then receive a payment consisting of her original investment, plus a portion of the interest paid by the claimant.

Bigley asked Mr. Douglas whether the investments were legal, and he assured her that they were, noting that numerous attorneys were involved in the investments. Asserting that Mr. Douglas was her investment advisor, Bigley testified that she relied on this assurance. Bigley further testified that she took no part in deciding which cases FSF would fund and had no control over how her investment money was used. Mr. Douglas made such decisions for the company and, according to Bigley, "was very secretive." Mrs. Douglas, who was the president and chief executive officer of FSF, also took part in deciding whether FSF should fund a particular lawsuit.

Bigley knew that the investments were high risk and that she would not receive any money back if a case was lost. She also conceded that no one can predict an exact date when a lawsuit will be settled, won, or lost. Nevertheless, during the next 18 months, she invested over $69,000 in approximately 40 cases with FSF, receiving back $33,850 in original investment money plus $12,162.77 in profit on 21 cases. Of her remaining investments, at least six cases, and her corresponding investments, had been declared "losses" at the time of trial.

As Bigley made her investments, she was provided information about the amount invested in the case, a profit estimate for her investment, and a prediction for how long it would take the case to settle. According to Bigley, however, the cases took longer to settle than the initial estimates. And when Bigley asked Mrs. Douglas for more information about her investments, Mrs. Douglas refused to provide additional details.

Bigley made her last investment with FSF on February 3, 2000. The next day, she loaned $25,000 to Expertfunding, a new entity formed by Mr. Douglas, in exchange for a promissory note. Approximately one year later, Mr. Douglas, who served as the Expertfunding's president and chief executive officer, informed Bigley that he anticipated the company would be able to repay the loan, plus interest, within thirty to forty-five days.

By August 2001, however, Expertfunding had not fully repaid the loan, and Bigley was also concerned about her outstanding investments with FSF, which were not producing a return as quickly as she had expected. She thus began writing letters to the Douglases, asking about the status of the FSF cases, demanding a list of attorneys handling those cases, and inquiring about repayment of the Expertfunding loan. Brian Douglas, Michael Douglas' son, responded in writing that FSF could not provide her with a list of attorneys involved in the cases she had funded because of confidentiality issues.

He also proposed an interest arrangement for the Expertfunding loan, which Bigley accepted.

Bigley ultimately began to question the legality of the investments with FSF, and she contacted the Georgia Secretary of State in August 2001. The Secretary of State's office conducted an investigation, concluding that FSF and Expertfunding, which, like FSF, engaged in litigation funding, had failed to register the investments with the Georgia Commissioner of Securities, in violation of several provisions of the Georgia securities laws. Accordingly, it issued a cease and desist order in 2003, directing FSF, Expertfunding, and the Douglases to stop violating these provisions. The order did not impact preexisting investments, such as Bigley's, or require the named parties to take any action with respect to those investments.

Bigley sued FSF, Expertfunding, and the Douglases in 2002, seeking return of her investment money. The trial court sent the case to the jury on the issues of breach of fiduciary duty, fraud, breach of contract, and rescission of an illegal contract. The jury returned a general verdict against all defendants, and the defendants appeal.

1. *Claims against FSF and the Douglases.*

(a) To support her breach of fiduciary duty claim, Bigley must prove the existence of such duty, breach of the duty, and damages proximately caused by the breach.[3] A fiduciary or confidential relationship arises "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc."[4] Such relationship may be created by law, contract, or the facts of a particular case.[5] Moreover, since "a confidential relationship may be found whenever one party is justified in reposing confidence in another, the existence of [this] relationship is generally a factual matter for the jury to resolve."[6]

At least some evidence supports the conclusion that a confidential relationship arose between Bigley, the Douglases, and FSF. The record shows that Bigley relied on FSF and the Douglases to control the manner in which her money was invested in litigation cases. Without input from Bigley, Mr. and Mrs. Douglas selected the lawsuits that would serve as the investment vehicle, then provided Bigley with only minimal information about the suits. When Bigley requested additional information, the Douglases and FSF declined to

---

[3] See *Bienert v. Dickerson*, 276 Ga. App. 621, 623 (2) (624 SE2d 245) (2005).

[4] OCGA § 23-2-58.

[5] See *Bienert*, supra at 624 (2) (a).

[6] Id.

provide it. Furthermore, Mrs. Douglas testified that Bigley shared the risk of the investments with FSF. Under these circumstances, a jury could conclude that the Douglases and FSF controlled her interest to such an extent that a confidential relationship developed.[7]

The evidence also authorizes a finding of breach. Bigley testified that she inquired about the legality of the investments when she first began investing in FSF. According to Bigley, Mr. Douglas assured her that the investments were legal "since . . . so many attorneys support[ed] the [litigation] funding." But Bigley presented evidence that the investment scheme violated the Georgia securities laws and, with respect to monetary advances to at least one personal injury litigant, required repayment at a monthly interest rate greater than five percent, in violation of OCGA § 7-4-18 (a).

Although there is no evidence that FSF or the Douglases actually knew the investment scheme contravened any laws, a jury could conclude that they simply *assumed* the legality of FSF's conduct without investigating whether the financial arrangements complied with applicable laws. Based on this evidence, a jury could further find that FSF and the Douglases showed a reckless indifference to consequences equivalent to intent[8] and breached a duty to Bigley by investing her money illegally and failing to discover and disclose the potential problems to her, especially given her direct inquiry about the scheme's legality.[9]

Finally, based on Bigley's testimony, the jury could find that: (1) she relied upon the assurances of legality in deciding whether to invest with FSF between July 1998 and February 2002; (2) absent such assurances, she would not have taken part in this high risk investment scheme; and (3) she lost money in the scheme. Under these circumstances, at least some evidence supports a finding of

---

[7] See OCGA § 23-2-58; *Cochran v. Murrah*, 235 Ga. 304, 307 (219 SE2d 421) (1975) ("[A] confidential relationship may exist between businessmen, depending on the facts."); *Bienert*, supra (fact that business broker represented business seller's interests and played an intimate role in business negotiations supported finding of confidential relationship between broker and seller); *Tigner v. Shearson-Lehman Hutton*, 201 Ga. App. 713, 715-716 (411 SE2d 800) (1991) (fiduciary relationship arose between brokerage firm and investor where firm, because of investor's disabilities, undertook an obligation to manage and control the investor's financial interest).

[8] See *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 596-597 (1) (562 SE2d 746) (2002).

[9] See *Glisson v. Freeman*, 243 Ga. App. 92, 99 (1) (532 SE2d 442) (2000) (requirements of good faith demand that fiduciary make known all material facts concerning the transactions and subject matter of the confidential relationship); see also *Jennings v. Smith*, 226 Ga. App. 765, 766 (1) (487 SE2d 362) (1997) ("'An officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, and an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or cooperated therein.'").

damage flowing from the breach. The trial court, therefore, properly declined to grant a j.n.o.v. to the Douglases and FSF on Bigley's breach of fiduciary duty claim.

(b) Similar evidence supports Bigley's fraud claim against these defendants. Fraud has five elements: "(1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages."[10] Moreover, "[w]here one person sustains towards another a relation of trust and confidence, his silence when he should speak or his failure to disclose what he ought to disclose constitutes fraud in law just as . . . actual affirmative false representations."[11]

The evidence shows that Mr. Douglas assured Bigley the FSF investment scheme was legal. Bigley also offered evidence that this assurance was false. Furthermore, the jury could conclude that the Douglases and FSF recklessly made such representation and/or recklessly failed to discover and disclose the illegality throughout Bigley's investment relationship with FSF. And such conclusions authorize a finding of scienter and intent to induce investment with respect to these defendants, especially if the jury found the existence of a confidential relationship.[12]

On appeal, FSF argues that statements as to the legality of the investment scheme are matters of opinion that cannot form the basis for a fraud claim. This generally is true because all persons are presumed to know the law and thus cannot justifiably rely on erroneous statements of law.[13] When a confidential relationship exists, however, a party "may be able to show justifiable reliance even if the representations were to matters of law."[14] Such relationship imposes "a lessened duty to discover independently what could have been discovered through the exercise of ordinary care."[15]

Because Bigley presented some evidence that she enjoyed a confidential relationship with the Douglases and FSF, a jury question

---

[10] *Ledee*, supra at 17 (1).

[11] *Tigner*, supra at 715.

[12] See *Petzelt v. Tewes*, 260 Ga. App. 802, 805 (581 SE2d 345) (2003) (" '[R]eckless representation of facts as true when they are not, if intended to deceive, is equivalent to a knowledge of their falsehood even if the party making the representation does not know that such facts are false. A misrepresentation is intended to deceive where there is intent that the representation be acted upon by the other party.' ") (emphasis omitted); *Chastain*, supra; *Tigner*, supra.

[13] See *Lakeside Investments Group v. Allen*, 253 Ga. App. 448, 450 (1) (559 SE2d 491) (2002).

[14] *Capriulo v. Bankers Life Co.*, 178 Ga. App. 635, 638 (2) (344 SE2d 430) (1986).

[15] *Yarbrough v. Kirkland*, 249 Ga. App. 523, 526 (2) (548 SE2d 670) (2001).

remained as to justifiable reliance.[16] And, as discussed in Division 1 (a), the jury could conclude that Bigley's reliance on the misinformation caused her damage. Accordingly, FSF and the Douglases were not entitled to a j.n.o.v. with respect to the fraud claim.

(c) We agree with the defendants, however, that the trial court should have granted their motion for j.n.o.v. on Bigley's breach of contract claim. Instead of responding substantively to the attack on this claim, Bigley asserts in her appellate brief that the defendants waived this allegation of error by failing to raise it in a directed verdict motion. The record clearly shows, however, that the defendants moved for both a directed verdict and j.n.o.v. on this claim.

On appeal, Bigley has provided us with no guidance as to which contracts were allegedly breached and/or how such breach occurred. The pretrial order does not mention a breach of contract claim against FSF or the Douglases, and we have found nothing in Bigley's trial presentation that expands or further defines this claim. The only reference to such claim appears in her original complaint, which vaguely alleges that FSF breached the investment contracts by failing to repay all of the money she invested.

We are left to conclude, therefore, that the breach of contract claim centers on the alleged failure to repay Bigley the amount invested in FSF. The record shows, however, that Bigley knew these investments were high risk. And she also understood that she would lose her investment if the claimant in the underlying case failed to recover damages. Moreover, she has pointed to no evidence that FSF and the Douglases neglected to repay her investment plus interest on cases that were settled or won. In short, she has not presented any evidence that the defendants breached the investment contracts. Nothing in the investment arrangement *guaranteed* a return. In fact, quite the opposite is true. Accordingly, FSF and the Douglases were entitled to a j.n.o.v. on the breach of contract claim.[17]

(d) In her third amended complaint, Bigley sought to rescind all of her outstanding investment contracts as illegal. The defendants moved for a directed verdict on this theory of recovery, but the trial

---

[16] See id. at 527-528; *Capriulo*, supra at 640. This Court recently indicated that an alleged misrepresentation regarding zoning regulations is a matter of law that cannot form the basis for a fraud claim, even if a confidential relationship exists. See *Howard v. Barron*, 272 Ga. App. 360, 363 (1) (612 SE2d 569) (2005). The *Howard* decision relied heavily on *Lakeside*, supra, which did not involve a confidential relationship, but noted that applicable zoning regulations and zoning maps are available for public review. See *Lakeside*, supra at 450. We find the facts in the instant case — which involves a rather complex investment scheme — distinguishable from those in *Howard* and the zoning context in general.

[17] See *Odem v. Pace Academy*, 235 Ga. App. 648, 654 (1) (510 SE2d 326) (1998) (party entitled to judgment as a matter of law on breach of contract claim where evidence shows that no breach occurred).

court submitted the claim to the jury. FSF and the Douglases now argue that the trial court erred in failing to grant a j.n.o.v. on this claim.

Once again, we agree. In Georgia, "[a] contract to do an immoral or illegal thing is void."[18] But a contract does not fall within this principle unless its purpose or object is illegal.[19] The rule has no application "where the object of the contract is not illegal or against public policy, but where the illegality is only collateral or remotely connected to the contract."[20]

Bigley has not shown or alleged that the *purpose* of the investment contracts was illegal. To support her theory below, she pointed only to the securities violations found by the Secretary of State and the allegedly usurious interest rates on certain advances in the underlying lawsuits.[21] The Secretary of State, however, did not declare FSF's investment contracts illegal. On the contrary, it found violations that could be remedied by properly registering the contracts with the State. Such violations do not bring the investment contracts within OCGA § 13-8-1.[22] Similarly, an allegedly usurious interest rate does not void an entire contract.[23] Although a lender cannot recover the usurious interest, it may still recover the principal. And, as found by our Supreme Court, "there is nothing inherently 'illegal' in an agreement whereby one party merely agrees to lend money and the other party merely agrees to repay it."[24]

The alleged illegalities cited by Bigley were incidental to the purpose of the investment contracts; those contracts did not *require* a securities violation or usurious interest rate. It follows that the trial court erred in denying the motion for j.n.o.v. on Bigley's rescission claim.

(e) Thus, although sufficient evidence supported the fraud and breach of fiduciary duty claims, FSF and the Douglases were entitled to judgment as a matter of law as to breach of contract and rescission. Given the general verdict, however, we do not know whether the jury based its award of damages, litigation expenses, and attorney fees on the properly supported claims or on the claims that were not proven. Accordingly, we reverse and remand for a new trial on Bigley's claims

---

[18] OCGA § 13-8-1.

[19] See *Shannondoah, Inc. v. Smith*, 140 Ga. App. 200, 202 (230 SE2d 351) (1976).

[20] Id.

[21] Bigley does not argue that, and we thus need not address whether, the investment contracts are illegal for some other reason.

[22] See id. at 202-203; see also *R.R.R. Ltd. Partnership v. Recreational Svcs.*, 264 Ga. 494, 496-497 (2) (448 SE2d 211) (1994).

[23] See *Pave Way Constr. Co. v. Parrish*, 187 Ga. App. 428, 428-429 (370 SE2d 495) (1988).

[24] See *R.R.R. Ltd. Partnership*, supra.

against FSF and the Douglases for fraud, breach of fiduciary duty, attorney fees, and litigation expenses.[25]

2. *Claims against Expertfunding.* Although Bigley's original complaint sought to recover from Expertfunding money owed under the promissory note associated with her $25,000 loan to the company, the undisputed evidence showed that Expertfunding had satisfied this obligation by the time of trial. Nevertheless, she opposed Expertfunding's motion for directed verdict, asserting that the company could be held liable on all claims because it had merged with and was the alter ego of FSF.

Bigley offered evidence that, in January 2000, Mr. Douglas provided her with an Expertfunding business plan that stated: "[Expertfunding] and [FSF] merged in the Fall of 1999." Bigley also testified that Mrs. Douglas told her the companies had merged. Mr. Douglas, however, asserted that Expertfunding and FSF maintained separate offices, kept separate records, and filed separate tax returns every year, including after 1999. He further testified that the companies "were never combined" and that the business plan was simply a "plan." Mrs. Douglas similarly testified that FSF maintained a separate corporate existence from Expertfunding and that the two never merged.

The record contains no evidence that the two companies commingled assets, records, or property, undermining Bigley's alter ego claim. And we cannot agree that the broad statements regarding merger in the business plan and in Bigley's testimony render Expertfunding liable for FSF's conduct. When one company purchases another, the purchaser generally assumes the liabilities of the seller if the transaction is, in fact, a merger.[26] But Bigley has not presented any evidence documenting a merger transaction between these two companies or establishing that FSF and/or Expertfunding no longer exists. Moreover, the evidence does not show that one of these companies was absorbed into the other, creating a de facto merger.[27] Bigley also has not demonstrated that the corporations lack separate personalities.[28] Under these circumstances, the jury was not author-

---

[25] See *Wolff v. Middlebrooks*, 256 Ga. App. 268, 269 (568 SE2d 88) (2002); *Denny v. D. J. D., Inc.*, 186 Ga. App. 727, 730 (3) (368 SE2d 329) (1988), adhered to on reconsideration, 188 Ga. App. 431, 434 (2) (373 SE2d 383) (1988).

[26] *Perimeter Realty v. GAPI, Inc.*, 243 Ga. App. 584, 592 (5) (c) (533 SE2d 136) (2000).

[27] See id. at 593 (describing elements that must be shown to prove a de facto merger).

[28] See *NEC Technologies v. Nelson*, 267 Ga. 390, 397 (5) (478 SE2d 769) (1996) ("'To establish the alter ego doctrine a plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or by confusing otherwise

ized to find Expertfunding liable for FSF's activities.[29] Accordingly, the trial court erred in failing to enter a j.n.o.v. on all claims with respect to Expertfunding.

*Judgment reversed and case remanded for further proceedings consistent with this opinion. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 8, 2006.

*Berman, Fink & Van Horn, Benjamin I. Fink, Steven A. Wagner,* for appellants.

*Hartley, Rowe & Fowler, Joseph H. Fowler,* for appellee.

---

separate properties, records or control, [cit.]) or by showing that a disregard of the corporate entity made it a mere instrumentality for the transaction of the other entity's own affairs and that there is such unity of interest and ownership that the separate personalities of the corporations no longer exist.").

[29] See id.