A07A0813, A07A0868. LOU ROBUSTELLI MARKETING SERVICES, INC. v. ROBUSTELLI et al.; and vice versa.

(650 SE2d 326)

ANDREWS, Presiding Judge.

These companion appeals arise from a dispute over a family business. In the aftermath of the son Jim's resignation from his father's sports marketing company, Lou Robustelli Marketing Services, Inc. ("Robustelli Marketing"), Lou's company sued Jim, his wife Sandra, and their new company, Robustelli Sports & Events Marketing, Inc. ("RSEM") ("the defendants"), for breach of fiduciary duty, conversion, and other wrongs. After the denial of the defendants' motion for directed verdict, and at the conclusion of a trial, a jury awarded Robustelli Marketing $31,653 for breach of fiduciary duty and $12,650.30 for conversion, but granted zero damages for tortious interference with business relations and misappropriation of trade secrets.[1] The jury also awarded Robustelli Marketing $92,000 in attorney fees, but refused to award punitive damages. In Case No. A07A0813, Robustelli Marketing appeals the portion of the verdict concerning tortious interference and misappropriation of trade secrets on the ground that it was inconsistent with the evidence. In Case No. A07A0868, the defendants argue that the trial court erred when it denied their motions for directed verdict and for judgment notwithstanding the verdict ("j.n.o.v."). We affirm in Case No. A07A0813 and affirm in part in Case No. A07A0868, but also reverse in part, vacate in part, and order a new trial on the question of damages and fees arising from Jim's breach of fiduciary duty.

For this Court to overturn a jury's verdict, it must be "so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice, or gross mistake on the part of the jurors." (Citation and punctuation omitted.) *Morris v. Savannah Valley Realty*, 233 Ga. App. 762, 765 (4) (505 SE2d 259) (1998). In other words, if there is any evidence to support the jury's verdict, we cannot disturb it. *Bishop Contracting Co. v. North Ga. Equip. Co.*, 203 Ga. App. 655, 657 (1) (417 SE2d 400) (1992).

> On appeal from a trial court's rulings on motions for directed verdict and j.n.o.v., we review and resolve the evidence and any doubts or ambiguities in favor of the verdict; directed verdicts and judgments n.o.v. are not proper unless there is no conflict in the evidence as to any material issue and the

---

[1] The jury found for the defendants on claims under the Georgia Racketeer Influenced and Corrupt Organizations Act. This finding is not at issue here.

evidence introduced, with all reasonable deductions there-from, demands a certain verdict.

(Citation omitted.) *James E. Warren, M.D., P.C. v. Weber & Warren Anesthesia Svcs.*, 272 Ga. App. 232, 235 (2) (612 SE2d 17) (2005).

So viewed, the record shows that in 1978, Lucian (Lou) and Helen Robustelli founded Robustelli Marketing in Stamford, Connecticut. Their son Jim began working for the company shortly thereafter. In 1994, Jim and his wife moved to Georgia and incorporated a business under the same name as a Georgia corporation, with Jim serving as president and Sandra performing clerical work. Robustelli Marketing's principal source of revenue at and after this time was the marketing of corporate events in connection with The Masters Tournament in Augusta.

Over the course of March 1997, Jim instructed Sandra to make out a series of 15 checks payable to "Cash" in amounts of either $9,500 or $9,900. After she did so, he signed each check, and one of the two endorsed them and obtained the cash. The couple did not consult Robustelli Marketing's accountant concerning these transactions. Jim asserted that the money had been used to obtain Masters badges for clients, but had no contemporaneous record of such use. The total amount withdrawn from Robustelli Marketing's accounts that March amounted to more than $144,000.

That same year, Lou and Jim began negotiations concerning the sale of the business to Jim. When these proved fruitless, Jim resigned on October 24, 1997. With his resignation, Jim sent Lou a status memo detailing matters on which he had been working. The status memo did not mention Jim's recent solicitations in connection with the 1998 Masters.

After his resignation, Jim kept Robustelli Marketing's old telephone number, failed to forward incoming calls to his father in Connecticut, retained the company address book, and copied a client list before returning it to his father. Although Jim drafted solicitations under "our new company name" before his resignation from Robustelli Marketing, he testified that the drafts were not sent out before that time. Jim also testified that at the time of his resignation, his father was "capable of working" and "could have taken the clients if we had them."

In the course of 1998, RSEM grossed more than $1 million from former Robustelli Marketing clients solicited by Jim while he was still an officer of Robustelli Marketing. Lou and his accountant also testified that they did not authorize Jim and Sandra to use Robustelli Marketing funds for improvements to Jim and Sandra's home.

*Case No. A07A0813*

1. Robustelli Marketing contends that because the verdict was inconsistent when it found for Robustelli Marketing on the tortious interference and misappropriation claims but awarded zero damages, the trial court erred when it denied its motion for a new trial limited to damages arising from these claims. We disagree.

A "jury verdict for zero damages . . . [is] a judgment for the defendant." *Gielow v. Strickland*, 185 Ga. App. 85, 87 (4) (363 SE2d 278) (1987). When the trial court in this case denied Robustelli Marketing's motion for new trial concerning these claims, it specifically found that the verdict was not inconsistent or inexplicable.

More important, Robustelli Marketing did not object to the verdict when it was returned by the jury, at which time "the meaning and effect of the verdict must have been clear to the parties." *Todhunter v. Price*, 248 Ga. 411, 412 (1) (283 SE2d 864) (1981). After the foreman published the verdict, the trial court asked whether there was "any reason that the members of the jury cannot be excused." Defense counsel then obtained permission to look at the completed verdict form "to make sure it was read correctly." The trial court then excused the jury. Both counsel then thanked the trial court, and the proceedings were adjourned.

> If either party felt the verdict was vague and ambiguous, objection should have been made when the verdict was returned so that the jury could clarify its meaning. A verdict which is not as specific as it could be but which is capable of being reduced to judgment will not be set aside on appeal where no timely objection was made thereto. Upon hearing an imprecise verdict rendered a litigant should not sit silently by, hoping to gain a retrial by failing to object.

(Citations omitted.) Id. at 412-413. Because Robustelli Marketing waived any objections it may have had concerning the form of the verdict, the trial court did not abuse its discretion when it denied Robustelli Marketing's motion for new trial on its claims for tortious interference and misappropriation of trade secrets. Id.; compare *Roberts v. Aderhold*, 273 Ga. App. 642, 646-649 (1), (2) (615 SE2d 761) (2005) (trial court did not abuse discretion in granting new trial where verdict set aside was not absolutely demanded by the evidence).

## Case No. A07A0868

In ten assertions of error, the defendants argue in the cross-appeal that the trial court should have granted their motions for directed verdict and for j.n.o.v. on Robustelli Marketing's claims, including damages and fees.

2. As we have held in Division 1 above, Robustelli Marketing was not entitled to a new trial on the question of damages concerning its claims for tortious interference with business relations and misappropriation of trade secrets. Given the jury's decision not to award damages on these claims, we need not consider the defendants' assertion that the trial court erred in failing to grant its motions for directed verdict and for j.n.o.v. concerning them.

3. There is evidence in the record before us to support the conclusions that Jim and Sandra converted over $144,000 of Robustelli Marketing's funds for their own use while employed by the company; that Jim retained the company telephone number and address book; and that Jim copied the company's client list.

(a) Under OCGA § 14-2-831 (a) (1), the shareholders of a corporation may bring an action on its behalf against directors or officers for wrongs including:

(A) The neglect of, failure to perform, or other violation of his duties in the management of the corporation or in the disposition of corporate assets;

(B) The acquisition, transfer to others, loss, or waste of corporate assets due to any neglect of, failure to perform, or other violation of duties; or

(C) The appropriation, in violation of his duties, of any business opportunity of the corporation.

See also *Quinn v. Cardiovascular Physicians, P.C.*, 254 Ga. 216, 218 (3) (326 SE2d 460) (1985).

It is true that "an employee breaches no fiduciary duty to the employer simply by making plans to enter a competing business while he is still employed. Even before the termination of his agency, he is entitled to make arrangements to compete and upon termination of employment immediately compete." (Citation and punctuation omitted.) *Bacon v. Volvo Svc. Center*, 266 Ga. App. 543, 546 (3) (597 SE2d 440) (2004) (granting motion for j.n.o.v. on claim for breach of fiduciary duty against former employee where there was no evidence to support the conclusion that client list used by employee in new business was confidential). In this case, however, Jim, the

president of Robustelli Marketing, not only retained its telephone number and address book and copied its client list for use in his new venture, but also ordered and participated in the taking of company funds in March 1997, months before his resignation. The evidence thus sufficed to sustain the jury's verdict as to Jim's breach of fiduciary duty and conversion. See *Telcom Cost Consulting v. Warren*, 275 Ga. App. 830, 834-835 (2), (3) (621 SE2d 864) (2005) (trial court properly denied plaintiff's motion for directed verdict concerning defendant's cross-claims for breach of fiduciary duty and conversion); *Multimedia Technologies v. Wilding*, 262 Ga. App. 576, 578 (2) (a) (586 SE2d 74) (2003) (trial court properly denied defendants' motion for j.n.o.v. concerning conversion claim). It follows that the trial court also did not err when it denied the defendants' motion for j.n.o.v. as to Jim.

(b) The evidence outlined above also sufficed to sustain the jury's verdict against Sandra for conversion. Sandra cannot be held liable for a breach of fiduciary duty, however, since she was not an officer, a director, or an agent of Robustelli Marketing.

"An agency relationship arises wherever one person, expressly or by implication, authorizes another to act for him." (Citation and punctuation omitted.) *Atlanta Market Center Mgmt. Co. v. McLane*, 269 Ga. 604, 606 (1) (a) (503 SE2d 278) (1998). To be an agent, however, one must be "more than the employee delegated . . . to look after certain accounts." Id. Specifically, one must have the "authority, real or ostensible, to create obligations on behalf of [the principal], bringing third parties into contractual relations with [it]." Id.

Although Sandra had been given the power to sign checks on the company account, there is nothing in the record before us to support the conclusion that Sandra had the power to deal with third parties, including the creation of company obligations, without Jim's approval. We therefore reverse the trial court's denial of the defendants' motions for directed verdict and for j.n.o.v. on this ground. See OCGA § 9-11-50 (e) (appellate court reversing denial of motion for directed verdict may order either the entry of judgment or a new trial "as the court may determine necessary to meet the ends of justice under the facts of the case"); *Douglas v. Bigley*, 278 Ga. App. 117, 120-125 (1) (628 SE2d 199) (2006) (reversing denial of motion for directed verdict as to breach of contract and rescission claims against some defendants and as to all claims against another defendant).

4. "The issue of damages is a matter for the jury, and a reviewing court should not interfere with the jury's damages award unless it is so small or excessive that it justifies an inference of gross mistake or undue bias." *Green v. Proffitt*, 248 Ga. App. 477, 478 (1) (545 SE2d 623) (2001).

The amount awarded for Jim and Sandra's conversion—$12,650.30 — was well within the range of the evidence, and we will not interfere with it, since "it was for the jury to determine how much was converted." *Multimedia Technologies*, supra, 262 Ga. App. at 578-579 (2) (a); see also *Green*, supra (affirming jury's calculation of damages). However, this jury awarded a single amount of damages — $31,653 — for breaches of fiduciary duty by both Jim and Sandra, and then proceeded to award $92,000 in attorney fees. We do not know whether these portions of the jury's award were based on the proper claim for Jim's breach of fiduciary duty or the improper one against Sandra. We therefore vacate the portions of the jury's award pertaining to damages for breach of fiduciary duty and fees, and remand for a new trial limited to the question of damages arising from Jim's breach of fiduciary duty, including fees and punitive damages. See *Douglas*, supra, 278 Ga. App. at 124-125 (1) (e) (granting new trial on breach of fiduciary duty and fees where trial court improperly denied defendants' motion for directed verdict on other issues); *Tunsil v. Jackson*, 248 Ga. App. 496, 499 (3) (546 SE2d 875) (2001) (jury authorized to find breach of fiduciary duty may also award punitive damages).

*Judgment affirmed in Case No. A07A0813. Judgment affirmed in part, reversed in part and vacated in part, and case remanded in Case No. A07A0868. Ellington and Adams, JJ., concur.*

DECIDED JULY 9, 2007 —
RECONSIDERATION DENIED JULY 26, 2007.

*Fellows, Johnson & La Briola, Stephen T. La Briola, Steven M. Kushner*, for appellant.
*James C. Watkins, Tom Pye*, for appellees.